**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TELA BIO, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY, C.R. BARD, INC., and DAVOL, INC.,<br><br>Defendants. | Civil Action No.: 2:25-cv-07189-GAW |

**ANSWER TO PLAINTIFF'S COMPLAINT**

Defendants Becton, Dickinson and Company; C.R. Bard, Inc.; and Davol, Inc. (together, "BD"), hereby respond to the Complaint (Dkt. 1) filed against BD by Plaintiff TELA Bio, Inc. ("TELA Bio").

## GENERAL DENIAL

Except to the extent allegations are specifically admitted herein, BD denies each and every allegation contained in the Complaint, including any allegations in the Complaint's headings and subheadings, and those not otherwise contained in one of the Complaint's numbered paragraphs. BD specifically denies any claim or allegation that BD has engaged in anticompetitive conduct.

## INTRODUCTION

The unnumbered paragraphs in the Introduction, which describe antitrust laws generally and summarize or characterize the Complaint, do not require a response. To the extent a response is required, BD denies the allegations and characterizations in the Introduction.

## PARTIES

1. BD admits that TELA Bio is a publicly traded medical technology company and that its stock ticker is TELA. BD denies that "TELA Bio's advanced technologies— including its marquee hernia mesh OviTex—offer lower prices and expand choice for patients." BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 1, and therefore denies them.

2. The characterization of Phasix as "a line of Resorbable mesh" is vague, and the characterization thereof is therefore denied. BD denies that the average market capitalization for Becton Dickinson in November 2024 was approximately $55.24 billion but otherwise admits the remaining allegations in Paragraph 2.

3. BD denies that Bard's headquarters and principal place of business is located at 730 Central Avenue, Murray Hill, New Jersey 07974. The characterization of Phasix as "a line of

Resorbable mesh" is vague, and the characterization thereof is therefore denied. BD admits the remaining allegations in Paragraph 3.

4. BD admits that Davol is a wholly owned subsidiary of Bard and of BD. The characterization of Phasix as "a line of Resorbable mesh" is vague, and the characterization thereof is therefore denied. BD admits the remaining allegations in Paragraph 4.

## JURISDICTION AND VENUE

5. Paragraph 5 sets forth legal conclusions for which no response is required. To the extent a response is required, BD admits that TELA Bio asserts causes of action pursuant to the cited provisions of the Sherman Act and Clayton Act, but denies that TELA Bio is entitled to any relief.

6. Paragraph 6 sets forth legal conclusions for which no response is required. To the extent a response is required, BD admits that the Court has subject matter jurisdiction.

7. Paragraph 7 sets forth legal conclusions for which no response is required. To the extent a response is required, BD admits that the Court has personal jurisdiction over BD and further admits that it contracts for the sale of its hernia mesh products with the entities identified in the paragraph and that it has at least six supply distributors for its products located within this District. BD lacks knowledge or information sufficient to form a belief about the truth of the characterization of the entities in the paragraph and on that basis denies the remaining allegations in the paragraph.

8. Paragraph 8 sets forth legal conclusions for which no response is required. To the extent a response is required, BD states that it sells Phasix and other products to customers located in this District and that its products have flowed in interstate commerce, but otherwise denies the allegations in Paragraph 8.

9. Paragraph 9 sets forth legal conclusions for which no response is required. To the extent a response is required, BD admits that venue is appropriate in this District for this action, although it denies the "events and omissions" purportedly giving rise to TELA Bio's claims occurred and thus that any portion of them occurred anywhere.

10. Paragraph 10 sets forth legal conclusions for which no response is required. To the extent a response is required, BD admits that the manufacture, marketing, sale, and distribution of the BD products at issue occur in and affect interstate commerce. BD denies the remaining allegations and characterizations in Paragraph 10.

## FACTUAL ALLEGATIONS

11. BD admits the allegations in the first sentence of Paragraph 11 but otherwise denies the allegations in this paragraph because they rely on vague characterizations.

12. BD admits that untreated hernias can be dangerous but otherwise denies the allegations in this paragraph because they rely on vague characterizations.

13. BD admits that the use of surgical mesh is one way to treat a hernia but otherwise denies the allegations in this paragraph because they rely on vague characterizations.

14. BD admits that hernia repairs are a common surgery in the United States. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 14, and therefore denies them.

15. BD admits the allegations in the first sentence of paragraph 15. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 15, and therefore denies them.

16. BD admits that TELA Bio's hernia mesh product, OviTex, is indicated for "the repair of hernias and/or abdominal wall defects that require the use of reinforcing or bridging material to obtain the desired surgical outcome." BD lacks knowledge or information sufficient

to form a belief about the truth of the allegations concerning other actions of third parties in Paragraph 16, including whether all physicians would or would not use a mesh that was not indicated for hernia repair to repair a hernia, and therefore denies them. As to the allegations concerning purchasing contracts, bills, and FDA approvals, the contents of those documents speak for themselves, and all characterizations thereof are denied. In all other respects, BD denies the allegations in Paragraph 16.

17. BD admits that care providers, like hospitals and hospital systems, are buyers of hernia mesh. BD further admits that GPOs and IDNs aggregate the purchases of care providers. In all other respects, BD denies the remaining allegations in Paragraph 17.

18. BD admits that GPOs negotiate contracts with suppliers on behalf of their care-provider members. BD further admits that GPOs, by negotiating on behalf of their network of care providers, aggregate the purchasing volume of their members to obtain better prices. BD further admits that Vizient, Premier, and HealthTrust are large GPOs in the United States. In all other respects, BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 18, and therefore denies them.

19. BD admits that IDNs, also known as health systems, are combinations of care providers like hospital or healthcare systems that purchase directly from suppliers at scale. BD further admits that HCA Healthcare, Universal Health Services, CommonSpirit Health, Jefferson Health, Advocate Health, Kaiser Permanente, and Penn Medicine are large IDNs in the United States. In all other respects, BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 19, and therefore denies them.

20. BD denies the allegations in Paragraph 20.

21. BD denies the allegations in Paragraph 21.

22. BD denies the allegations in Paragraph 22.

23. BD admits that some hernia mesh is made from synthetic material that is designed to remain inside the body indefinitely. BD further admits that this kind of synthetic mesh is usually made with plastic or filaments like polypropylene or polyester. BD further admits that this kind of synthetic hernia mesh has been used since 1958 and is generally the least expensive set of materials for mesh products. BD further admits that after a hernia operation, the use of mesh (including synthetic mesh) can result in the complications identified in the fifth sentence of the paragraph but otherwise denies the allegations in that sentence. In all other respects, BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 23, and therefore denies them.

24. BD admits that some hernia mesh does not stay intact in the body permanently and can be made from biosynthetic polymers that degrade over time after being inserted into the body, such as BD's Phasix. BD further admits that hernia mesh can be made from a combination of synthetic polymers and animal tissue. In all other respects, BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 24, and therefore denies them.

25. BD denies that Resorbable mesh made up 8% of the hernia mesh market by unit share in 2024. BD further denies that Resorbable mesh debuted in the United States in 2007 and that physicians turn to Resorbable mesh much more often when repairing ventral hernias, given the vagueness of the term "Resorbable mesh." In all other respects, BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 25, and therefore denies them.

26. BD denies the allegations in Paragraph 26.

27. BD denies the allegations in Paragraph 27.

28. BD lacks knowledge or information sufficient to form a belief as to why every surgeon chooses options for patients, and therefore denies the allegations in the fourth sentence of Paragraph 28. In all other respects, BD denies the remaining allegations in Paragraph 28.

29. BD admits that hernia mesh is often considered a Physician Preference Item. BD further admits that Physician Preference Items are generally medical products whose selection is heavily influenced by physician choice and preference regarding product type. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 29, and therefore denies them.

30. BD denies the allegations in Paragraph 30.

31. BD denies the allegations in Paragraph 31.

32. BD denies the allegations in Paragraph 32.

33. BD admits that selling hernia mesh in the United States requires product-specific regulatory clearances from the FDA and ongoing reporting obligations. BD otherwise denies the allegations in Paragraph 33.

34. BD denies the allegations in Paragraph 34.

35. BD admits that it holds patents and has propriety knowledge regarding its hernia mesh products. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 35, including with respect to the intellectual property of others, and therefore denies them.

36. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36 pertaining to physician interactions with hospitals or hospital systems, and therefore denies them. BD denies the remaining allegations in Paragraph 36.

37. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37 regarding the development of OviTex and TELA Bio's entry into the market for hernia mesh, and therefore denies them. BD denies the remaining allegations in Paragraph 37.

38. BD denies the allegations in Paragraph 38.

39. BD denies the allegations in the first sentence of Paragraph 39. BD admits that in the 1970s, Davol launched several hernia mesh products which were commercially adopted. BD further admits that Bard acquired Davol in 1980, and that BD acquired Bard and Davol and their product portfolios in 2017. In all other respects, BD denies the allegations in Paragraph 39.

40. BD admits that it signed a consent order with the FTC agreeing to divest its soft tissue core needle biopsy device business and Bard's tunneled home drainage catheter system business. In all other respects, BD denies the allegations in Paragraph 40.

41. BD admits that it sells Bard Mesh and Ventralight ST Mesh. BD denies that it can charge supracompetitive prices for its mesh products and denies that it is doing so. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 41, and therefore denies them.

42. BD admits that it makes and sells Phasix Mesh, Phasix ST Mesh, and Phasix Umbilical Hernia Mesh. BD denies that it can charge supracompetitive prices for its mesh products and denies that it is doing so. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 42, and therefore denies them.

43. BD denies the allegations in Paragraph 43 on the basis that the language "a suite of other hernia repair products" is vague.

44. BD denies the allegations in Paragraph 44.

45. BD admits that it launched the Phasix ST Umbilical Hernia Patch recently. In all other respects, BD denies the allegations in Paragraph 45.

46. Paragraph 46 does not identify the clinical studies it purports to characterize. BD thus lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46, and therefore denies them.

47. BD denies the allegations in Paragraph 47.

48. To the extent Paragraph 48 describes litigation that BD has been involved in and related settlements, the documents in those cases speak for themselves, and all characterizations thereof are denied.

49. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 49, and therefore denies them.

50. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 50, and therefore denies them.

51. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 51, and therefore denies them.

52. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52, and therefore denies them.

53. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding OviTex's average selling price, and therefore denies them. In all other respects, BD denies the remaining allegations in Paragraph 53.

54. BD denies the allegations in the first sentence of Paragraph 54. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations regarding

what market participants recognize, and therefore denies them. BD admits that Phasix and OviTex are at times competing products, but it otherwise denies the remaining allegations in Paragraph 54.

55. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 55, and therefore denies them.

56. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning OviTex's sales in Paragraph 56, and therefore denies them. BD denies the remaining allegations in Paragraph 56.

57. BD denies the allegations in the third sentence of Paragraph 57. In all other respects, BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 57, and therefore denies them.

58. BD denies the allegations in Paragraph 58.

59. BD denies the allegations in Paragraph 59.

60. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations concerning TELA Bio's sales in Paragraph 60, and therefore denies them. BD denies the remaining allegations in Paragraph 60.

61. BD admits that it has sold hernia mesh products for more than fifty years. BD further admits that it acquired Bard and Davol in 2017, and that it sells other medical devices, including syringes, IV catheters, rapid diagnostic instruments, surgical instruments, home-healthcare products, ports, and drainage devices, and other products that help collect blood. BD further admits that it reported total revenues of more than $20 billion in 2024. In all other respects, BD denies the remaining allegations in Paragraph 61.

62. BD admits that OviTex and Phasix are at times competing products but denies the remaining characterizations in the second sentences of Paragraph 62. BD lacks knowledge or

information sufficient to form a belief about the remaining allegations in Paragraph 62, and therefore denies them.

63. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations about OviTex's market share, and therefore denies them. In all other respects, BD denies the allegations in Paragraph 63.

64. BD admits that it has entered into contracts with many GPOs, IDNs, and care providers to supply a variety of its products, but it otherwise denies the allegations in Paragraph 64.

65. BD denies the allegations in Paragraph 65.

66. BD admits that, to the extent a care provider is purchasing hernia mesh under a contract that provides volume discounts, a care provider can purchase BD products at the access tier pricing. Otherwise, BD denies the allegations in Paragraph 66.

67. BD denies the allegations in Paragraph 67.

68. To the extent Paragraph 68 describes a contract with Vizient, the contents of the contract speak for themselves, and all characterizations thereof are denied. In all other respects, BD denies the allegations in Paragraph 68.

69. BD denies the allegations in the first sentence of Paragraph 69. To the extent the remaining allegations in Paragraph 69 describe a contract with Premier Inc., the contents of the contract speak for themselves, and all characterizations thereof are denied.

70. BD denies the allegations in Paragraph 70.

71. BD denies the allegations in Paragraph 71.

72. BD denies the allegations in Paragraph 72.

73. BD denies the allegations in Paragraph 73.

74. BD denies the allegations in Paragraph 74.

75. BD admits that it has agreements with Vizient and Premier. The reference to "all major GPOs" is vague, and the characterization thereof is therefore denied. In all other respects, BD denies the allegations in Paragraph 75.

76. BD admits that it contracts directly with IDNs but lacks knowledge or information sufficient to form a belief about the truth of what percentage of IDNs its contracts encompass. BD otherwise denies the allegations in Paragraph 76.

77. BD admits that the parties to some of its agreements with buyers of its hernia mesh products mutually agree that the agreements are confidential. In all other respects, BD denies the allegations in Paragraph 77.

78. BD denies the allegations in Paragraph 78.

79. BD denies the allegations in Paragraph 79.

80. BD denies the allegations in Paragraph 80.

81. BD admits that many surgeons would "stick with Phasix" and know it well. BD further admits that "many surgeons" would refuse to switch from Phasix to a rival brand. In all other respects, BD denies the allegations in Paragraph 81.

82. BD denies the allegations in Paragraph 82.

83. BD denies the allegations in Paragraph 83.

84. BD admits that hernia mesh is often considered a Physician Preference Item, but it otherwise denies the allegations in Paragraph 84.

85. BD denies the allegations in Paragraph 85.

86. BD denies the allegations in Paragraph 86.

87. BD denies the allegations in Paragraph 87.

88. BD denies the allegations in Paragraph 88.

89. BD denies the allegations in the first sentence of Paragraph 89. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 89, and therefore denies them. To the extent Paragraph 89 describes the document excerpted in Paragraph 89, the contents of the full document (which may or may not be fully represented in the Complaint) speak for themselves, and all characterizations thereof are denied.

90. BD denies the allegations in the first sentence of Paragraph 90. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 90, and therefore denies them. To the extent Paragraph 90 describes the document excerpted in Paragraph 90, the contents of the full document (which may or may not be represented in the Complaint) speak for themselves, and all characterizations thereof are denied.

91. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 91, and therefore denies them. To the extent Paragraph 91 describes the document excerpted in Paragraph 91, the contents of the full document (which may or may not be fully represented in the Complaint) speak for themselves, and all characterizations thereof are denied.

92. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 92, and therefore denies them. To the extent Paragraph 92 describes the document excerpted in Paragraph 92, the contents of the full document (which may or may not be fully represented in the Complaint) speak for themselves, and all characterizations thereof are denied.

93. BD denies the allegations in Paragraph 93.

94. BD denies the allegations in the first sentence of Paragraph 94. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 94, and therefore denies them. To the extent Paragraph 94 describes the document excerpted in Paragraph 94, the contents of the full document (which may or may not be fully represented in the Complaint) speak for themselves, and all characterizations thereof are denied.

95. BD denies the allegations in the first three sentences of Paragraph 95. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 95, and therefore denies them. To the extent Paragraph 95 describes the document excerpted in Paragraph 95, the contents of the full document (which may or may not be fully represented in the Complaint) speak for themselves, and all characterizations thereof are denied.

96. BD denies the allegations in the first sentence of Paragraph 96. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 96, and therefore denies them. To the extent Paragraph 96 describes the document excerpted in Paragraph 96, the contents of the full document (which may or may not be fully represented in the Complaint) speak for themselves, and all characterizations thereof are denied.

97. BD denies the allegations in Paragraph 97.

98. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 98 regarding TELA Bio's marketing strategies, and therefore denies them. In all other respects, BD denies the allegations in Paragraph 98.

99. BD denies the allegations in the first sentence of Paragraph 99. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 99, and therefore denies them. To the extent Paragraph 99 describes the document

excerpted in Paragraph 99, the contents of the full document (which may or may not be fully represented in the Complaint) speak for themselves, and all characterizations thereof are denied.

100. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 100, and therefore denies them. To the extent Paragraph 100 describes the document excerpted in Paragraph 100, the contents of the full document (which may or may not be fully represented in the Complaint) speak for themselves, and all characterizations thereof are denied.

101. BD denies the allegations in the first sentence of Paragraph 101. BD lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 101, and therefore denies them.

102. BD lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 102 that pertain to TELA Bio's OviTex sales, and therefore denies them. In all other respects, BD denies the allegations in Paragraph 102.

103. BD denies the allegations in Paragraph 103.

104. BD denies the allegations in Paragraph 104.

105. Given the wide variety of Phasix products, BD lacks knowledge or information sufficient to form a belief about what products TELA Bio purports to refer to in Paragraph 105, and therefore denies the allegations about those products. In all other respects, BD denies the allegations in Paragraph 105.

**CLAIMS FOR RELIEF**

106. BD incorporates by reference its responses to Paragraphs 1 through 105 as if set forth fully herein.

107. BD denies the allegations in Paragraph 107.

108. BD denies the allegations in Paragraph 108.

109. BD denies the allegations in Paragraph 109.

110. BD denies the allegations in Paragraph 110.

111. BD denies the allegations in Paragraph 111.

112. BD denies the allegations in Paragraph 112.

113. BD denies the allegations in Paragraph 113.

114. BD incorporates by reference its responses to Paragraphs 1 through 113 as if set forth fully herein.

115. BD denies the allegations in Paragraph 115.

116. BD denies the allegations in Paragraph 116.

117. BD denies the allegations in Paragraph 117.

118. BD denies the allegations in Paragraph 118.

119. BD denies the allegations in Paragraph 119.

120. BD denies the allegations in Paragraph 120.

121. BD denies the allegations in Paragraph 121.

122. BD incorporates by reference its responses to Paragraphs 1 through 121 as if set forth fully herein.

123. BD denies the allegations in Paragraph 123.

124. BD denies the allegations in Paragraph 124.

125. BD denies the allegations in Paragraph 125.

126. BD incorporates by reference its responses to Paragraphs 1 through 125 as if set forth fully herein.

127. BD denies the allegations in Paragraph 127.

128. BD denies the allegations in Paragraph 128.

129. BD denies the allegations in Paragraph 129.

130. BD denies the allegations in Paragraph 130.

131. BD denies the allegations in Paragraph 131.

132. BD denies the allegations in Paragraph 132.

133. BD denies the allegations in Paragraph 133.

## PRAYER FOR RELIEF

134. TELA Bio's "Prayer for Relief" section does not contain factual allegations and therefore does not require a response. To the extent a response is required, BD denies that TELA Bio is entitled to any relief whatsoever.

135. TELA Bio's "Prayer for Relief" section does not contain factual allegations and therefore does not require a response. To the extent a response is required, BD denies that TELA Bio is entitled to any relief whatsoever.

## DEMAND FOR JURY TRIAL

TELA Bio's "Demand for Jury Trial" does not contain factual allegations and therefore does not require a response.

## AFFIRMATIVE DEFENSES

Without assuming any burden that it would not otherwise bear, BD asserts, without limitation, all defenses raised in its Motion to Dismiss and other filings, whether or not separately re-pleaded herein. BD also asserts the following affirmative and other defenses. In listing the defenses below, BD does not knowingly or intentionally waive any defenses, including arguments about which issues fall within TELA Bio's burden of proof. BD also reserves the right to rely on any affirmative or other defense or claim that may subsequently come to light, and expressly reserves the right to amend its Answer to assert such additional defenses or claims.

**FIRST AFFIRMATIVE DEFENSE**

1. TELA Bio's claims are barred, in whole or in part, by laches and/or the four-year statute of limitations applicable to their claims. *See* 15 U.S.C. § 15b. To the extent TELA Bio was injured, its injuries accrued more than four years before TELA Bio filed this lawsuit. No tolling doctrine applies. Thus, TELA Bio's claims for damages are barred by the statute of limitations. Because any alleged injuries accrued more than four years before the filing of this lawsuit, TELA Bio knew or should have known of its causes of actions. Throughout this time, BD has invested (and continues to invest) significant resources into, among other things, its hernia mesh products and customer relationships. Consequently, TELA Bio's claims for injunctive relief are barred by the equitable doctrine of laches.

**SECOND AFFIRMATIVE DEFENSE**

2. TELA Bio's alleged activities do not give rise to antitrust liability because, notwithstanding any alleged adverse effects on competition, BD had a legitimate business justification for the alleged activities including, but not limited to, lawful pricing, contracting, and product strategies that enhance efficiency and reduce costs, which is apparent on the face of the Complaint, and which BD intends to support through witness and expert testimony.

**THIRD AFFIRMATIVE DEFENSE**

3. TELA Bio's claims are barred, in whole or in part, by the doctrines of estoppel, and waiver including to the extent TELA Bio has knowingly acquiesced in and failed to timely challenge the contracting structures, purchasing frameworks, and marketplace conditions that it now alleges are unlawful. TELA Bio is also estopped by its own conduct, including its efforts to market and sell its products under the same conditions it now attacks, and BD's reliance thereon. TELA Bio has also engaged in inequitable conduct, including as a result of its own business

decisions and by seeking to benefit from the same conditions it now characterizes as unlawful. Thus, TELA Bio has waived its claims and/or should be estopped from pursuing its claims.

## FOURTH AFFIRMATIVE DEFENSE

4. TELA Bio's claim for damages is barred because of, and to the extent of, its failure to mitigate damages. TELA Bio, through the exercise of reasonable diligence, could have taken steps to minimize its alleged damages, such as by pursuing available alternative distribution channels or customers; employing alternative contracting and pricing strategies to compete for sales; pursuing collaborative arrangements or partnerships to reduce alleged foreclosure; or expanding or diversifying its product offerings. Any recovery must therefore be reduced to the extent that damages could have been avoided through reasonable mitigation efforts.

## FIFTH AFFIRMATIVE DEFENSE

5. TELA Bio's claims are barred, in whole or in part, for failure to state a claim upon which relief can be granted.

Dated: June 2, 2026

Respectfully submitted,

/s/ *David Z. Gringer*
David Z. Gringer (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
David.Gringer@wilmerhale.com

Mark A. Ford (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Mark.Ford@wilmerhale.com

Susan A. Musser (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Susan.Musser@wilmerhale.com

Joseph E. Wolfson (Pennsylvania Bar No. 44431)
STEVENS & LEE
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102
Telephone: (215) 751-1249
Joseph.Wolfson@stevenslee.com

*Attorneys for Defendants Becton, Dickinson and Company et al.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 2nd day of June 2026, I caused a true and correct copy of the foregoing Answer to be electronically filed with the Court using CM/ECF, which will provide copies to all counsel of record.

Dated: June 2, 2026

/s/ *David Z. Gringer*
David Z. Gringer