UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TELA BIO, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY, C.R. BARD, INC., and DAVOL, INC.,<br><br>Defendants. | Civil Action No.: 2:25-cv-07189-GAW |

**<u>DEFENDANTS' MOTION TO COMPEL PRODUCTION IN RESPONSE TO REQUEST FOR PRODUCTION NO. 46</u>**

In prior litigation against another hernia mesh competitor, TELA Bio ("TB") defended trade secret misappropriation claims by making assertions about hernia mesh competition and its own product that are directly at odds with its core allegations here. *LifeCell Corp. v. Tela Bio, Inc.* ("*LifeCell*"), 2015 WL 4082323 (N.J. Super. May 12, 2015). Becton Dickinson ("BD") seeks discovery of those admissions and other relevant TB statements from the *LifeCell* case. Yet despite BD's agreement to substantially narrow its request to just three discrete categories of readily available materials—TB's interrogatory responses, witness deposition transcripts, and expert reports—TB refuses to produce anything in response.

TB claims that the *LifeCell* court's protective order effectively forecloses discovery, arguing that it is unable even to review its own prior statements and testimony because they ***may*** contain material LifeCell designated confidential and that the routine steps necessary to enable disclosure under that order pose a disproportionate burden. These arguments are baseless. It strains credulity to suggest that a protective order could act to completely shield TB's ***own prior statements*** about market conditions, competition, and its product. Regardless, protective orders are intended to facilitate discovery, not allow litigants to hide from it. If any aspects of TB's statements are subject to the protective order, TB's critical admissions—which go at least to the threshold, market-definition element of its case—more than justify the simple steps necessary to seek court authorization for, or LifeCell's consent to, production. The Court should compel TB to cooperate in taking the steps needed to produce these limited materials.

## BACKGROUND

In *LifeCell*, a New Jersey court entered a preliminary injunction barring the launch of TB's hernia mesh product. 2015 WL 4082323, at *1. After reviewing the evidence presented by LifeCell, a hernia mesh competitor, the court expressed "no doubt" that LifeCell was likely to

succeed in "establish[ing] by clear and convincing evidence that [TB] misappropriated [its] proprietary and confidential information." *Id.* at *27, *31, *37. The court found, among other things, that TB hired several former LifeCell employees and obtained from them confidential marketing strategies and customer information relating to LifeCell's hernia mesh product, Strattice. *Id.* at *30 ("[TB] ha[s] already misappropriated [LifeCell's] sales and marketing-related information").[1] The injunction—which the court issued before TB could "fully unleash[] its LifeCell sales force against LifeCell," *id.* at *37—remained in effect until the parties settled the litigation.[2]

In its ultimately unsuccessful effort to marginalize the importance of the trade secrets it allegedly stole, TB offered testimony about the nature of competition among hernia mesh products, its own positioning in the market, and general "market pressures" that impacted LifeCell. *Id.* at *22-23, *37. BD's Request for Production ("RFP") No. 46 seeks "[a]ll Documents produced and testimonies given in [the] *LifeCell* [litigation]." Musser Decl. Ex. B, Defendants' First Set of Requests for Production at 14. BD compromised by narrowing the request to seek only TB's interrogatory responses, TB's employee testimony, and TB's expert reports from the litigation. Musser Decl. Ex. D, BD's Sept. 21 Letter at 1.

## ARGUMENT

### I. The *LifeCell* Materials Are Relevant

Based on what is available from the New Jersey court's preliminary injunction opinion, the *LifeCell* materials are relevant at least to the issues of market definition and causation in this case.

[1] In its October 26, 2026 submission to the Court on this RFP, TB misleadingly described the *LifeCell* case as solely concerning "purported trade secrets regarding a manufacturing process." Position Statements at 6.

[2] The *LifeCell* opinion referred to TB's product as "TELAMax," which, based on BD's investigation, appears to refer to the product TB ultimately marketed and commercialized as OviTex.

As the Court knows, a key issue in this case is whether TB's OviTex product competes in a narrow relevant market comprised only of resorbable mesh products, as TB alleges, Compl. ¶ 62, or whether it competes in a broader hernia mesh market that also includes permanent mesh. According to TB in this case, the defining characteristic of the alleged "resorbable mesh market" is that those products are used for "complex repairs," while permanent mesh products are utilized more for non-complex cases. *E.g.*, *id.* ¶ 28. In *LifeCell*, however, TB asserted that its resorbable product was "intended … for use in non-complicated hernia repair operations," 2015 WL 4082323, at *23, which calls into question TB's market definition allegations here, not to mention its claim that it does not compete with permanent mesh products. *See, e.g.*, *Three Crown Ltd. P'ship v. Salomon Bros., Inc.*, 1993 WL 277182, at *2 (S.D.N.Y. July 21, 1993) ("Evidence of such a prior inconsistent position may be useful at trial.").

Furthermore, in this case, with respect to the alleged resorbable market for complex hernia repairs, TB alleges that Phasix is the dominant product. Compl. at 2. But in *LifeCell*, several years after Phasix's 2012 market entry, TB identifies LifeCell's Strattice as "a market leader in complex hernia [repair] products" and says "there are approximately 30 other significant products presently competing with Strattice in the market." 2015 WL 4082323, at *16, *22. TB's identification of those products likely undercuts its attempt to narrowly define a market around Phasix here.

Additionally, the *LifeCell* materials contain information that likely explains the poor performance of TB's products, which bears on whether BD's conduct caused any antitrust injury. The materials will certainly shed light on TB's conduct that led to the preliminary injunction, which delayed its commercial sales and likely impacted its expansion. *LifeCell*, 2015 WL 4082323, at *1.[3] And, according to the court, they will include TB witness testimony about TB's

---

[3] TB effectively conceded the relevance of this information when it offered during the meet-and-confer process to provide instead written Rule 30(b)(6) response on "the effect … of the

product and market positioning, *id.* at *35—information that will allow BD to explore whether TB's business strategy was flawed from the outset. In addition, TB attributed a drop in LifeCell sales to "enormous market pressures" facing the "niche product." *Id.* at *23. BD is entitled to understand what "market pressures" TB identified.

TB argues that the requested discovery is too old to be relevant, but whether TB can explain away its inconsistent statements based on changes in the market over time goes to the weight of the evidence, not discoverability. Regardless, the probative value of the admissions cannot be assessed until they are evaluated through discovery. While BD has pushed back on the proportionality of conducting broad, burdensome searches of old custodial files and of archived records reaching back a decade, what BD seeks here are discrete records, readily available with minimal burden, that would constitute under-oath admissions.[4]

## II. The Protective Order Is Not A Bar To Production

The *LifeCell* protective order does not bar TELA Bio from producing the materials. To be sure, the court in *LifeCell* issued a protective order that allowed LifeCell to designate certain discovery material as "Confidential" or "Attorneys' Eyes Only." *See* Musser Decl. Ex. A, *LifeCell* Prot. Order ¶¶ 2-5.[5] But whether and to what extent the requested *TB* materials contain *any* information LifeCell had designated under the protective order is unknown, and TB has apparently

---

LifeCell litigation and settlement on TELA Bio's ability to enter [the market] and expand as a supplier of hernia mesh." Musser Decl. Ex. C, TB's Sept. 14 Letter at 2. But TB's offer was clearly insufficient—a 2026 narrative prepared by litigation counsel is no replacement for sworn testimony contemporaneous with the relevant events.

[4] Furthermore, at TB's own urging, BD produced submissions it made to the government relating to an acquisition that took place in 2017, one year after *LifeCell* settled. *See* Musser Decl. Ex. D, BD's Sept. 21 Letter at 1-2. Basic notions of reciprocity, therefore, suggest TB cannot refuse this similar production simply because of the age of the materials.

[5] Obviously, by its own terms, the protective order would not prohibit TB from using and disclosing its own statements and documents in future discovery. Musser Decl. Ex. A, *LifeCell* Prot. Order ¶¶ 6, 9 (limiting the *receiving party's* use of materials designated "Confidential" or "Attorneys' Eyes Only").

undertaken no effort to find out. It is beyond dispute that a significant portion of the LifeCell record is non-confidential. Indeed, the New Jersey court discussed extensively TB's positions and arguments in a 62-page ***public opinion***. And the relevant material discussed above is entirely separate from LifeCell's technical trade secrets and confidential marketing strategies and customer lists; instead, it relates to TB's product positioning and market analysis (none of which the court redacted when describing). TB's counsel from that case (who admittedly possesses the requested documents) could immediately produce at least redacted materials.[6] And, as to the remainder, the protective order's restrictions may be lifted by waiver from the designating party or court order. *Id.* ¶¶ 7-11, 18. This Court should order TB's cooperation in that effort. In *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, for example, the court navigated discovery of documents subject to a different court's protective order by determining the documents' relevance, identifying the documents designated confidential, and ordering the parties to seek relief from the court that issued the order. 662 F. Supp. 2d 375, 384 (D. Del. 2009).[7] Indeed, it is unclear whether the relevant material would even still qualify for protection under the terms of the order. And, if it did, that information would be protected under this Court's protective order.

---

[6] TB's suggestion that it does not have control of materials in its former counsel's possession, *see* Musser Decl. Ex. C, TB's Sept. 14 Letter at 1-2; Musser Decl. Ex. E, TB's Oct. 5 Letter at 2, is baseless. TB's former counsel holds the *LifeCell* materials under the protective order's archival provision. *See* Musser Decl. Ex. A, *LifeCell* Prot. Order ¶ 19. And "[u]nder Fed. R. Civ. P. 34 … the clear rule is that documents in the possession of a party's *current or former* counsel are deemed to be within that party's 'possession, custody and control.'" *Nippon Steel & Sumitomo Metal Corp. v. POSCO*, 2014 WL 3447111, at *7 (D.N.J. July 10, 2014). It "defies common sense that a party cannot obtain records in the possession of its attorney/agent upon demand." *Id.* at *10.

[7] In its October 26, 2026 submission, TB argues that this issue is not ripe until BD obtains LifeCell's consent for production or secures a modified protective order. Position Statements at 5-6. That puts the cart before the horse so long as TB continues to dispute the relevance of the material, which it does. *See* Musser Decl. Ex. C, TB's Sept. 14 Letter at 1. In any event, counsel for LifeCell has expressed a willingness to consider a waiver once the materials at issue have been identified; the Court should thus require TB to log the responsive materials it claims are protected.

Dated: November 4, 2026

Respectfully submitted,

/s/ *David Z. Gringer*
David Z. Gringer (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
David.Gringer@wilmerhale.com

Mark Ford (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Mark.Ford@wilmerhale.com

Susan Musser (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Susan.Musser@wilmerhale.com

Joseph E. Wolfson (Pennsylvania Bar No. 44431)
STEVENS & LEE
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102
Telephone: (215) 751-1249
Joseph.Wolfson@stevenslee.com

*Attorneys for Defendants Becton, Dickinson and Company et al.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of November 2026, I caused a true and correct copy of the foregoing, the declarations and accompanying exhibits in support, and Proposed Order to be electronically filed with the Court using CM/ECF, which will provide copies to all counsel of record.

Dated: November 4, 2026

*/s/ David Z. Gringer*
David Z. Gringer