# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| TELA BIO, INC.,<br><br>Plaintiff,<br><br>v.<br><br>BECTON, DICKINSON AND COMPANY, C.R. BARD, INC., and DAVOL, INC.,<br><br>Defendants. | Civil Action No.: 2:25-cv-07189-GAW |

**DEFENDANTS' FIRST SET OF REQUESTS FOR PRODUCTION OF DOCUMENTS TO PLAINTIFF TELA BIO, INC.**

Pursuant to Rules 26 and 34 of the Federal Rules of Civil Procedure, Defendants Becton, Dickinson and Company, C. R. Bard, Inc., and Davol, Inc. (together, "BD"), by their undersigned counsel, request that Plaintiff TELA Bio, Inc. ("TELA Bio") produce documents responsive to the following requests (the "Requests") to Wilmer Cutler Pickering Hale and Dorr LLP, 250 Greenwich Street, New York, NY 10007, within thirty (30) days of service of these Requests, or at such time and place as may be agreed to between the parties.

## DEFINITIONS

The words and phrases used in these Requests shall have the meanings ascribed to them under the Federal Rules of Civil Procedure. In addition, the following terms, regardless of capitalization, pluralization, or tense, shall have the meanings set forth below:

1. The definitions and rules of construction set forth in Federal Rules of Civil Procedure 26 and 34 shall apply to these Requests and are incorporated as if fully set forth herein.

2. "Action" means the above-captioned action titled *TELA Bio, Inc. v. Becton, Dickinson and Company, C.R. Bard, Inc., and Davol, Inc.*, Case No. 2:25-cv-07189-GAW.

3. "And" and "or" have both conjunctive and disjunctive meanings. In other words, the use of the conjunctive form in the Requests includes the disjunctive form, and vice versa. The terms "and" and "or" should be construed to give each Request its broadest possible meaning.

4. "Any" means "any and all."

5. "Communication" shall be broadly construed to mean any transmission, exchange, or transfer of information (in the form of facts, ideas, inquiries, or otherwise) by any means and of any nature, whether oral or written or recorded by other means, from one person to another, including, without limitation, any correspondence, memoranda, notes, diaries, daily calendars, voicemail messages, recordings, email, email attachment, direct messaging, "instant messages," text messages, social media messages, chat messages, mobile phone messaging application messages, computer files, electronic or magnetic media, and/or other Documents containing such contacts.

6. "Complaint" refers to the Complaint filed by TELA Bio on December 19, 2025 (Docket No. 1) in this Action.

7. "Concerning" means referencing, relating to, describing, evidencing, reflecting, constituting, documenting, discussing, referring to, mentioning, analyzing, refuting, or recording.

8. "Customer" means anyone who purchases hernia mesh products through a GPO, an IDN, another intermediary, or directly from a hernia mesh supplier.

9. "Defendants" or "BD" means Defendants Becton, Dickinson and Company, C. R. Bard, Inc., and Davol, Inc., and all persons or entities acting or having acted on their behalf

including, but not limited to, their divisions, subsidiaries, holding companies, predecessors, and any other related entity.

10. "Document" shall be construed to have the broadest possible meaning permitted by Federal Rules of Civil Procedure 26 and 34 and relevant case law, and shall include without limitation the original and all non-identical copies and drafts, regardless of origin or location, of any writing and any written, printed, typed or other graphic or photographic matter of any kind or description, in draft or final form, including, but not limited to, Communications, correspondence, letters, telegrams, facsimiles, cables, telex messages, e-mails, memoranda, notes, interoffice and interdepartmental Communications, transcripts, minutes of conversations or meetings, reports, studies, any audio or video recordings, voicemail, contracts, calendar or diary entries, pamphlets, handwritten notes, charts, tabulations, records of meetings, conferences, telephone or other conversations or Communications, and tapes or slides, and other data compilations from which information can be obtained or translated, if necessary, by Plaintiff through detection devices into reasonably usable form, and all other records kept by electronic, photographic, or mechanical means however denominated, which are in Plaintiff's possession, custody, or control. If a document has been prepared in several copies, or additional copies have been made, or copies are not identical (or, which by reason of subsequent modification of a copy by the addition of notations or other modifications, are no longer identical), each non-identical copy is a separate Document.

11. "Each" shall be construed to include "every," and "every" shall be construed to include "each."

12. "GPO" means Group Purchasing Organization. GPOs are third parties that negotiate contracts with suppliers on behalf of their care-provider members.

13. "Hernia mesh" or "hernia mesh products" means any implantable medical device, materials, or product used to repair, reinforce, or support weakened or damaged tissue in connection with hernia procedures including, but not limited to, surgical mesh products and hernia mesh fixation devices.

14. "Including" shall be construed to mean "including, but not limited to."

15. "IDN" means Integrated Delivery Network. IDNs, also known as health systems, are combinations of care providers like hospitals or healthcare systems that purchase directly from suppliers.

16. "Key Opinion Leader" shall mean an individual within a particular professional field whose opinions are frequently used in marketing in that field.

17. "Person" shall include any natural person, corporation, partnership, proprietorship, association, business, company, joint venture, government unit, and other public or private entity or organization.

18. "Plaintiff" or "TELA Bio" means Plaintiff TELA Bio, Inc., its subsidiaries, divisions, departments, affiliates, each and every other legal entity within its control, and any officer, director, employee, agent, or representative thereof.

19. "Possession, custody, or control" shall mean possession, custody, or control or rights to possession, custody, or control of documents by Plaintiff, including all documents in the possession of Plaintiff's attorneys or agents, all documents that Plaintiff owns in whole or in part, all documents that Plaintiff has a right by contract, statute, or otherwise to use, inspect, examine, or copy on any terms, all documents for which Plaintiff has an understanding (express or implied) that Plaintiff may use, inspect, examine, or copy on any terms and all documents that Plaintiff has, as a practical matter, the ability to use, inspect, examine, or copy.

20. “Relate to,” “related to,” or “relating to” shall mean concerning, constituting, containing, comprising, embodying, reflecting, evidencing, analyzing, identifying, stating, discussing, mentioning, referring directly or indirectly to, describing, dealing with, or in any way pertaining to, in whole or in part.

21. “SKU” shall mean “Stock Keeping Unit,” or a unique product identifier.

22. “You” and “Your” shall mean the responding Plaintiff, including any agents, or persons acting or purporting to act on their behalf.

23. “Wrap-around discounts” or “wrap-around rebates” shall mean discounts and rebates offered on non-hernia mesh products based on purchases of hernia mesh products.

24. All words that are used in their singular form include the plural form, and vice versa.

25. All words phrased in the past tense shall be construed to include the present tense, and vice versa.

26. All words shall be given the Definitions provided regardless of capitalization.

27. The use of any Definition for the purposes of these Requests shall not be deemed to constitute an agreement or acknowledgement on the part of BD that such definition is accurate, meaningful, or appropriate for any other purposes in this Action.

**INSTRUCTIONS**

1. Unless otherwise specified, the time period covered by these Requests shall be from January 2020 to Present.

2. These Requests call for all responsive documents, data, and information in your possession, custody, or control, including documents in the possession or control of your agents, representatives, and attorneys, and documents to which you have reasonable access.

3. For each Request, you are to produce entire documents including all attachments, enclosures, cover letters, memoranda, and appendices. Copies that differ in any respect from an original (because, by way of example only, handwritten or printed notations have been added) shall be treated as separate documents and produced separately. A Request for a document shall be deemed to include a Request for any and all transmittal sheets, cover letters, exhibits, enclosures, or attachments to the document, in addition to the document itself.

4. If you deem a Request to be objectionable, in whole or in part, please state such objections with specificity and answer all other portions of the Request to which you do not object. The responses shall state whether documents are being withheld from inspection and production on the basis of an objection, or whether inspection and production of the responsive documents will occur notwithstanding such objection.

5. Electronically stored information shall be produced pursuant to any forthcoming Protective Order and in the formats to be agreed upon or otherwise ordered by the Court.

6. If a Request calls for the production of a document that you claim to be privileged, you shall list the document on a privilege log that conforms with the procedures to be agreed upon and with Federal Rule of Civil Procedure 26(b)(5).

7. If you encounter any ambiguity in construing the Request or a definition or an instruction relevant to it, set forth the matter deemed ambiguous and the construction selected or used in responding to the Request.

8. You are reminded of your obligation under Federal Rule of Civil Procedure 26(e) to make further or supplemental productions of responsive documents created, discovered, or acquired between the date of initial production and any time thereafter, including the time of trial.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

**REQUEST NO. 1:**

All Documents and Communications, including any drafts thereof, that TELA Bio relied upon, considered, reviewed, or cited in drafting the Complaint including, but not limited to, on the following topics: (1) BD's alleged restriction, through coercion or otherwise, of its customers' use of OviTex; (2) the alleged denial of TELA Bio's access to hospitals, healthcare events and conferences, and surgeons; (3) TELA Bio's alleged lost opportunities due to BD's conduct; and (4) the alleged confidentiality provisions in BD's contracts that allegedly impede competition.

**REQUEST NO. 2:**

All Communications between TELA Bio and any persons or entities referenced in the Complaint including, but not limited to, in any of the examples in paragraphs 89-101, and all Documents reflecting or relating to such Communications.

**REQUEST NO. 3:**

All sales data showing the monthly volume, in both dollars and units purchased, under each volume discount tier (if applicable) for every TELA Bio hernia mesh Customer including, but not limited to, GPOs, IDNs, or any Customer purchasing or who has purchased hernia mesh products from TELA Bio.

**REQUEST NO. 4:**

All contracts, purchase agreements, sales agreements, rebate agreements, or any other agreements relating to purchasing terms or conditions between TELA Bio and any GPO, IDN, or Customer relating to hernia mesh products, as well as all Documents and Communications relating to the negotiations thereof.

**REQUEST NO. 5:**

All Documents and Communications relating to negotiations regarding carve-out and separate product categories with other entities.

**REQUEST NO. 6:**

All Documents and Communications relating to wrap-around discounts or wrap-around rebates, including for hernia mesh products.

**REQUEST NO. 7:**

All Communications, as well as Documents relating to such Communications, between TELA Bio and GPOs, IDNs, or Customers concerning pricing, discounts, or contract terms relating to hernia mesh products.

**REQUEST NO. 8:**

All Communications between TELA Bio and GPOs, IDNs, or Customers relating to hernia mesh products and concerning: (a) BD; (b) any other hernia mesh manufacturers; (c) complaints regarding hernia mesh products sold by TELA Bio, BD, or any other hernia mesh manufacturers; (d) allegations or documentation of non-compliance with the terms of any contracts or other agreements including, but not limited to, purchasing commitments; and (e) the classification or differentiation of hernia mesh products as "permanent," "synthetic," "resorbable," "biologic," "biosynthetic," or "bioresorbable."

**REQUEST NO. 9:**

All Documents and Communications relating to the classification or differentiation of hernia mesh products by use case.

**REQUEST NO. 10:**

All Documents and Communications analyzing, discussing, or referring to a "market" for TELA Bio's hernia mesh products.

**REQUEST NO. 11:**

All Documents and Communications relating to, reflecting, or analyzing TELA Bio's market share, product strategy, pricing strategy, or competitive position in hernia mesh for both the U.S. and Europe including, but not limited to, any market studies, competitive assessments, or strategic plans.

**REQUEST NO. 12:**

All reports, market data, or market analyses relating to hernia mesh including, but not limited to, IQVIA market data.

**REQUEST NO. 13:**

All Documents analyzing, reflecting, or modeling CMS reimbursement rates for TELA Bio's hernia mesh products.

**REQUEST NO. 14:**

All Documents and Communications analyzing the quality and/or use cases of hernia mesh products sold by TELA Bio as compared to the hernia mesh products sold by any other hernia mesh manufacturers as to topics including, but not limited to, physician preference, clinical performance, and effectiveness.

**REQUEST NO. 15:**

All surveys, studies, or analyses of physician preference, clinical performance, and effectiveness regarding hernia mesh products sold by TELA Bio, BD, or any other hernia mesh manufacturers.

**REQUEST NO. 16:**

All Documents and Communications reflecting GPOs, IDNs, Customers, and/or physicians declining to use TELA Bio's hernia mesh products in place of, in whole or in part, BD's hernia mesh products, as well as the reasons for such decision.

**REQUEST NO. 17:**

All Documents and Communications analyzing the hernia mesh product portfolios from TELA Bio as compared to the product portfolios from any other hernia mesh manufacturers.

**REQUEST NO. 18:**

All TELA Bio sales and marketing materials.

**REQUEST NO. 19:**

All Documents and Communications analyzing the uses of hernia mesh products between Ambulatory Surgery Centers (acute) and Integrated Delivery Networks (non-acute).

**REQUEST NO. 20:**

All sales projections for TELA Bio's hernia mesh products.

**REQUEST NO. 21:**

Documents sufficient to show aggregate data and information relating to TELA Bio's sales, revenues, and costs for hernia mesh products, organized by product SKU, Customer, contract, and (if applicable) volume tier.

**REQUEST NO. 22:**

All Documents and Communications relating to calculations used to determine which pricing tier a Customer's purchases qualify for.

**REQUEST NO. 23:**

All invoices relating to the sale of TELA Bio's hernia mesh products.

**REQUEST NO. 24:**

All Documents relating to the price lists concerning TELA Bio's hernia mesh products, including all historical and current versions thereof.

**REQUEST NO. 25:**

All Documents relating to or analyzing the On-Time In-Full metric of TELA Bio's hernia mesh products.

**REQUEST NO. 26:**

All Documents relating to or analyzing the recall statistics concerning TELA Bio's hernia mesh products.

**REQUEST NO. 27:**

All Documents and Communications relating to how TELA Bio's sales force staffs its engagement with hospitals, ambulatory surgery centers, and other healthcare providers, including, but not limited to, Documents sufficient to show the number of TELA Bio's sales representatives, the structure of its sales force, and its sales representatives as assigned to each facility.

**REQUEST NO. 28:**

Documents sufficient to show the production capacity for TELA Bio's hernia mesh products.

**REQUEST NO. 29:**

All Documents reflecting past, present, and projected research, development, and launch timelines and expenditures relating to TELA Bio's hernia mesh products.

**REQUEST NO. 30:**

All Documents, including drafts, concerning TELA Bio's submissions to any government agency or body relating to hernia mesh products including, but not limited to, submissions to regulators and congressional testimony.

**REQUEST NO. 31:**

All Documents and Communications relating to TELA Bio's Form 10-Ks including, but not limited to, drafts and talking points.

**REQUEST NO. 32:**

All Communications with the Food and Drug Administration about hernia mesh including, but not limited to, all materials describing or referencing OviTex.

**REQUEST NO. 33:**

All Documents including, but not limited to, clinical studies, trials, or analyses, relating to the safety or efficacy of TELA Bio's hernia mesh products, including direct or indirect payments made to individuals or entities involved therewith.

**REQUEST NO. 34:**

All Documents and Communications including, but not limited to, complaints and internal discussions thereof, relating to Customer, physician, or other third-party feedback concerning: (1) TELA Bio's hernia mesh products, and (2) BD's hernia mesh products, including complaints submitted by TELA Bio to a third party.

**REQUEST NO. 35:**

All Documents and Communications including, but not limited to, presentations, addressed or otherwise conveyed to TELA Bio's board or senior leadership concerning competition and/or market positioning with respect to hernia mesh products.

**REQUEST NO. 36:**

All Communications with Key Opinion Leaders about hernia mesh products.

**REQUEST NO. 37:**

All transcripts, recordings, or preparation materials for investor calls, pitches, or presentations relating to hernia mesh products.

**REQUEST NO. 38:**

All press releases and other public statements concerning hernia mesh products, as well as any internal Communications relating to those public statements.

**REQUEST NO. 39:**

All TELA Bio organizational charts including, but not limited to, organizational charts of TELA Bio's sales, marketing, and contracting structures.

**REQUEST NO. 40:**

All Documents and Communications relating to potential mergers, acquisitions, partnerships, joint ventures, or distribution arrangements relating to TELA Bio's hernia mesh products including, but not limited to, any offering products.

**REQUEST NO. 41:**

All Documents and Communications relating to customer bids and attrition including, but not limited to, all win-loss analyses, materials reflecting reasons for lost bids and failed conversions, and customer churn.

**REQUEST NO. 42:**

All Documents and Communications analyzing, discussing, or referring to any actual or perceived barriers to adoption or use of TELA Bio's hernia mesh products including, but not

limited to, clinical issues, product limitations, portfolio gaps, pricing, physician preferences, competitive products, and supply or availability issues.

**REQUEST NO. 43:**

All Documents and Communications analyzing, discussing, or referring to the potential expansion of TELA Bio's product portfolio.

**REQUEST NO. 44:**

All Documents and Communications concerning TELA Bio's efforts to obtain or maintain contracts with GPOs, IDNs, and other customers including, but not limited to, instances where TELA Bio did not obtain, lost, or failed to renew such contracts.

**REQUEST NO. 45:**

All Documents and Communications analyzing: (1) BD's pricing programs for its hernia mesh products; and (2) how BD's pricing programs for its hernia mesh products impacted the sales of TELA Bio's hernia mesh products.

**REQUEST NO. 46:**

All Documents produced and testimonies given in *LifeCell Corp. v. Tela Bio, Inc.*, No. SOM-C-12013-15 (Super. Ct. of N.J. Ch. – Somerset Cnty.).

**REQUEST NO. 47:**

All Documents and Communications relating to TELA Bio's $13 million underwritten registered direct offering, as closed in or about November 2025, and Credit Agreement with Perceptive Credit Holdings V, LP, as entered into in or about November 2025, including the Credit Agreement itself.

**REQUEST NO. 48:**

All Documents and Communications relating to the statement: "We have a broad portfolio of intellectual property protecting our products, which we believe, when combined with our proprietary manufacturing processes and know-how, provides significant barriers to entry," as made in TELA Bio's Form 10-K for the fiscal year ended December 31, 2020.

**REQUEST NO. 49:**

All Documents and Communications with, or reflecting any payments to, Dr. George DeNoto III, M.D., FACS, Dr. Paul Szotek, M.D., M.B.A., FACS, and Dr. Samir Awad, M.D., M.P.H., FACS.

**REQUEST NO. 50:**

All Documents and Communications relating to the decision to initiate this Action.

**REQUEST NO. 51:**

Documents sufficient to show TELA Bio's claimed damages in this Action.

**REQUEST NO. 52:**

All Documents that TELA Bio intends to or may use at summary judgment or trial of this litigation.

Dated: June 22, 2026

/s/ *David Z. Gringer*
David Z. Gringer (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: (212) 230-8800
David.Gringer@wilmerhale.com

Mark A. Ford (*pro hac vice*)
WILMER CUTLER PICKERING

HALE AND DORR LLP
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000
Mark.Ford@wilmerhale.com

Susan A. Musser (*pro hac vice*)
WILMER CUTLER PICKERING
HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Susan.Musser@wilmerhale.com

Joseph E. Wolfson (Pennsylvania Bar No. 44431)
STEVENS & LEE
1500 Market Street
East Tower, Suite 1800
Philadelphia, PA 19102
Telephone: (215) 751-1249
Joseph.Wolfson@stevenslee.com

*Attorneys for Defendants Becton, Dickinson and Company et al.*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 22, 2026, I caused the foregoing to be served via electronic mail on all counsel of record.

/s/ *David Z. Gringer*
David Z. Gringer