# EXHIBIT D

WILMERHALE

September 21, 2026

Via Email

**Susan A. Musser**

+1 202 663 6155 (t)
+1 202 663 6363 (f)
susan.musser@wilmerhale.com

Matthew D. Reade, Esq.
Kellogg, Hansen, Todd, Figel & Frederick, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036

**Re: *TELA Bio, Inc. v. Becton, Dickinson & Co., et al.*, No. 2:25-cv-07189 (E.D. Pa.) — BD's Request for Production No. 46**

Counsel:

I write in response to TELA Bio's September 14, 2026 letter regarding BD's Request for Production No. 46. BD does not accept TB's proposed compromise of a written Rule 30(b)(6) response in lieu of production, and BD disagrees that the *LifeCell* protective order forecloses production of the materials BD has requested.

## I. The Parties' Negotiations to Date

RFP No. 46 originally sought "[a]ll Documents produced and testimonies given in *LifeCell Corp. v. TB, Inc.*, No. SOM-C-12013-15 (Super. Ct. of N.J. Ch. – Somerset Cnty.)." TB objected in its July 22, 2026 responses on relevance, temporal-scope, and burden grounds. At the parties' August 11 meet-and-confer, TB repeated those objections, emphasizing the age of the matter and the volume of the underlying record. In the interest of compromise, BD twice narrowed the request: first to TB's own document productions rather than the entire litigation record, and then, as reflected in TB's September 14 letter, to TB's interrogatory responses, the testimony of TB employees, and the expert reports from that case.

Ultimately, BD offered to provide certain materials related to its acquisition of C.R. Bard—which also occurred one year after the *LifeCell* settlement—in exchange for TB's agreement to produce the narrowed set of *LifeCell* documents. And, on September 3, in response to vague references to the protective order in the *LifeCell* case, BD proposed, and TB accepted, an exchange under which BD would produce the 4(c)/HSR materials from its acquisition of C. R. Bard in return for TB providing, by September 14: (1) whether the interrogatory responses, TB transcripts, and expert reports had been maintained; (2) whether producing any of them implicates the *LifeCell* protective order and, if so, why; (3) a copy of that protective order; and (4) TB's position on which materials it would produce. BD honored its side of that exchange by producing the requested 4(c)/HSR materials. TB, however, ultimately refused to produce any materials from the *LifeCell* litigation.

WILMERHALE



TB's September 14 letter confirms that its former counsel has maintained the requested interrogatory responses, employee testimony, and expert reports. That confirmation resolves any question of existence or burden of collection. What remains is TB's assertion that the March 25, 2015 protective order entered by the Superior Court of New Jersey bars production to BD, and its offer of a written Rule 30(b)(6) response as a substitute. BD declines that substitute. A written narrative prepared by counsel is not a substitute for TB's own sworn statements and its employees' sworn testimony about the market, its competitors, and its entry and expansion.

## II. The Requested Materials Are Relevant

TB's relevance objection rests on a mischaracterization of what BD seeks. BD is not seeking discovery into the trade-secret merits of the *LifeCell* case. BD seeks TB's own statements—made under oath and in contemporaneous business materials placed in that record—about the hernia mesh competitive landscape, competitor identity, benchmarking, pricing posture, and barriers to entry. Those are core issues here, and their relevance is independent of the trade-secret subject matter of the underlying dispute.

The publicly available portions of that record illustrate the point. The court's decision recounts that, in a July 30, 2012 presentation to banks and private-equity investors, TB represented that its "primary competitors were to be Strattice and AlloDerm," and that it benchmarked its product's performance against Strattice as the "quality leader and exemplar." *LifeCell Corp. v. TB, Inc.*, No. SOM-C-12013-15, 2015 WL 4082323, at *23 (N.J. Super. Ch. May 12, 2015). The same decision records TB's position that, apart from its own product, "there are approximately 30 other significant products presently competing with Strattice in the market." *Id.* at *16. Statements of that kind bear directly on market definition and substitutability, and they are TB's own admissions.

TB's temporal objection likewise misses the mark. The Parties negotiated a general cut-off date of January 2020 for custodial productions as part of an extensive negotiation around ESI discovery. Notwithstanding that cut-off, the Parties also agreed that each side would consider individual requests for information predating January 2020. Indeed, at TELA Bio's request, BD has already produced certain data from 2018 forward. Here, the burden of producing these documents is low, as TB has essentially admitted. And the probative value of these documents is likely high given that they may explain TB's entry into the market and market conditions at that time.

## III. The State-Court Protective Order Is Not a Bar to Production

TB's remaining objection is that the New Jersey protective order forbids disclosure. That order does not relieve TB of its obligations under the Federal Rules, and it is not a bar to production of relevant material in this action.

Discovery disputes in federal court are governed by federal law. Where a prior protective order is invoked, courts in this Circuit balance the relevance of and need for the materials against comity concerns and any reliance interests associated with the earlier order. *See generally Pansy v. Borough of Stroudsburg*, 23 F.3d 772 (3d Cir. 1994). Applying that framework, the court in *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375 (D. Del. 2009), recognized that a federal court determines relevance and discoverability under federal law and, rather than ignoring the issuing court's order, first determines whether the materials are relevant to the pending action, requires the responding party to identify which documents are subject to the prior order, and then permits the parties to seek modification or relief from the issuing court as to those documents. *Id.* at 384. That is the path available here: the existence of the *LifeCell* order does not excuse TB from identifying and logging responsive materials, and it does not answer whether those materials must ultimately be produced.

Several considerations weigh decisively in favor of disclosure:

- **The materials are ten years old.** The *LifeCell* litigation settled more than a decade ago, which substantially undercuts any claim that the materials remain competitively sensitive. *See Larry Pitt & Assocs. v. Lundy Law, LLP*, 346 F. Supp. 3d 761, 769 (E.D. Pa. 2018) ("[E]ven if such information was at some time colorably proprietary, the passage of time (now approaching 10 years for the earliest) is clearly stale information which removes any claim of protection."); *id.* at 767 ("The purported need for protection is substantially diminished where the passage of time has made such documents stale.") (citing *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 129 F.R.D. 483, 485 (D.N.J. 1990)). That said, TB's own views of the market at the time of its entry and its analysis of the competitive landscape at that time, while not competitively sensitive, are still probative to understand the market at that time.

- **A stipulated protective order is prophylactic, not permanent.** Parties who stipulate to a protective order do not thereby take "the position that the documents [will] remain sealed indefinitely," and a later request to modify or unseal is not inconsistent with the original order. See *In re ESML Holdings Inc.*, 135 F.4th 80, 92 (3d Cir. 2025) (explaining that such an order "is prophylactic," permitting confidential designations "subject to later challenges to the propriety of those designations"). The same principle is reflected in the leading treatise, which notes that protective orders are routinely modified to permit litigants in other cases to access relevant discovery materials. *See* Wright & Miller, 8A Fed. Prac. & Proc. Civ. § 2044.1 (3d ed.).

- **This Court's protective order eliminates any confidentiality concern.** Production here would not result in public dissemination; it would place the materials under the protective order entered in this action, Dkt. 50, with the designations and access limitations that order provides. Courts are more willing to permit disclosure where the receiving

litigation has equivalent confidentiality protections in place. *See Sandoz Inc. v. Lannett Co.*, No. 20-3899, 2021 WL 4744893, at *2 (E.D. Pa. Oct. 12, 2021) (party's "strong privacy interest in its confidential information" adequately protected where "there is an identical protective order [], which will limit disclosure of the selected depositions to 'Outside Counsel's Eyes Only'").

TB's reliance on Rule 34(a)(1) is also misplaced. TB confirmed that its former counsel has maintained the materials, and documents in the hands of a party's ***own*** former counsel are within that party's possession, custody, or control. Moreover, a substantial portion of what BD seeks—TB's interrogatory responses and the testimony of TB's own employees—reflects TB's own information and its own statements. To the extent discrete portions contain material that *LifeCell* designated as confidential, the answer is redaction, logging, and, if necessary, an application to the New Jersey court—not a categorical refusal.

## IV. Proposed Path Forward

To move this issue forward without motion practice, BD proposes the following:

- TB promptly produces the requested interrogatory responses, TB employee testimony, and expert reports that are not designated Confidential or Attorneys' Eyes' Only by LifeCell, or that reflect TB's own designations, subject to the protective order in this action.

- As to any remaining materials, TB identifies and logs them with sufficient particularity for BD and the Court to assess the assertion, consistent with the process described in *Inventio*.

- The parties jointly seek LifeCell's written consent to disclosure under Paragraphs 8 and 11 of the March 25, 2015 order and, if consent is not forthcoming, jointly apply to the Superior Court of New Jersey for a modification permitting production subject to this Court's protective order. BD is prepared to take the laboring oar on both.

Please let us know TB's position by September 24, 2026. We are available to meet and confer at a mutually agreeable time; if the parties cannot resolve the issue, BD will raise it with the Court.

Sincerely,

*/s/ Susan A. Musser*
Susan A. Musser