# EXHIBIT E

KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
SUMNER SQUARE
1615 M STREET, N.W.
SUITE 400
WASHINGTON, D.C. 20036-3215

(202) 326-7900
FACSIMILE:
(202) 326-7999

October 5, 2026

*Via Email*

Susan Musser, Esq.
Wilmer Cutler Pickering Hale & Dorr LLP
2100 Pennsylvania Avenue N.W.
Washington, D.C. 20037

Re: *TELA Bio, Inc. v. Becton, Dickinson & Co., et al.*, No. 2:25-cv-07189 (E.D. Pa.): Second Letter to BD re: BD's RFP No. 46

Counsel:

I write to respond to your September 21 letter about BD's Request for Production No. 46. BD's letter only confirms that TELA Bio's objections to producing all expert reports, TELA Bio's interrogatory responses, and TELA Bio's testimony from *LifeCell Corp. v. TELA Bio, Inc.*, No. SOM-C-12013-15 (N.J. Super. Ct. Ch. Div.) are well grounded.

As an initial matter, at no point has TELA Bio withdrawn its objections or agreed to produce any materials from *LifeCell*, as your letter implies. Rather, as BD's letter ultimately acknowledges, TELA Bio agreed only to (i) determine whether the *LifeCell* materials had been maintained, (ii) determine whether producing them would implicate the *LifeCell* protective order and, if so, why, (iii) provide a copy of the order, and (iv) state TELA Bio's position on which, if any, materials it would produce. TELA Bio provided all that information exactly as BD asked. We have in no way reneged on the parties' agreement.

To summarize, here is why TELA Bio cannot and need not produce those materials:

1. ***The state-court protective order covers the materials for the benefit of LifeCell, a nonparty to this case.*** Although TELA Bio's counsel in this matter have been unable to personally review the materials in question given the state court's protective order, our present understanding is that all the materials BD seeks are designated pursuant to that order. That order is not a formality. It bars any use of designated material "for any business, commercial, competitive, personal, or other purpose" beyond the *LifeCell* action itself. *LifeCell* Protective Order ¶¶ 6, 9. And as BD's own cited authorities acknowledge, the nature of the *LifeCell* dispute—a dispute over trade secrets—heightens, rather than diminishes, the reliance interests that protective order secured. *See Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 790 (3d Cir. 1994).

2. ***TELA Bio lacks possession, custody, or control over the materials.*** The *LifeCell* protective order required TELA Bio "to return or destroy all copies of" confidential material at the end of the case. *LifeCell* Protective Order ¶ 19. Though TELA Bio's former counsel was allowed to keep some materials for archival purposes, they will not provide those materials in violation of the state court's order. Citing nothing, BD asserts that TELA Bio nonetheless has control over those materials. But the "leading treatise" BD proffers elsewhere in its letter points to cases that declined to find possession, custody, or control on analogous facts. *See* 8B Wright & Miller, Fed. Prac. & Proc. Civ. § 2210 (3d ed.) (citing *Hobley v. Burge*, 433 F.3d 946 (7th Cir. 2006) for the proposition that "Defendant city did not have control over documents generated in separate litigation that remained in its former counsel's possession").[1]

3. ***If the materials are "clearly stale" as BD says, they are irrelevant and not proportional to the needs of the case.*** BD claims (at 3) that producing the *LifeCell* documents is no big deal because there can be no "claim that the materials remain competitively sensitive" when they are instead "clearly stale." But that contention completely refutes any asserted relevance. If the materials are too stale to be competitively sensitive, then they certainly are not "probative" in this antitrust case about BD's anticompetitive conduct and its effects from 2021 to present. This case is not about market conditions or the "competitive landscape" in 2012, 2013, and 2014—years before TELA Bio (or even Becton Dickinson) started selling hernia mesh. It is about market conditions today. *See Elad v. NCAA*, 160 F.4th 407, 416-17 (3d Cir. 2025) (rejecting district court's reliance on the state of the market at earlier times rather than "current market realities"). How TELA Bio believed its products might fare in July 2012—more than fourteen years ago, years before BD purchased its hernia-mesh monopoly, and years before TELA Bio even went to market—tells us nothing about the market today that cannot be gleaned from the parties' (and nonparties') *actual* sales and transaction data, contracting documents, the agreed-upon custodial discovery, and depositions of nonparties and the parties' current and former employees.

BD has not shown any genuine interest in investigating market conditions as early as 2012. BD has declined to simply download and produce its own transaction data before 2018, which would be far more probative of actual market conditions in prior years. In its own subpoenas to nonparties, BD has not requested transaction data or anything else from the time period of the *LifeCell* litigation. BD's own requests to TELA Bio seek information only from January 2020 to present. And in fact, BD has repeatedly resisted far more recent and more probative discovery on the ground that it would impose "a disproportionate burden that substantially outweighs any marginal benefit." Letter from S. Musser to M. Reade at 1 (Aug. 24, 2026) (arguing that having to download emails onto a hard drive and then drag them into BD's e-discovery platform, rather than using an integrated software connection, would be too burdensome to justify pre-2020 custodial discovery); *see also* Letter from S. Musser to M. Reade

---

[1] *See also 800537 Ontario Inc. v. Auto Enters., Inc.*, 205 F.R.D. 195, 196-97 (E.D. Mich. 2000) (no control where plaintiffs' lawyer refused to provide requested documents because of his legal obligation not to "disseminate" or "use" those documents "beyond what was strictly necessary for the defense" of legal proceedings in another jurisdiction).

re: Response to TELA Bio's July 29, 2026 Letter at 5 (Aug. 6, 2026) (asserting that BD's 2017 acquisition studies, which BD had already collected in a folder to produce to the FTC, were "neither relevant . . . nor proportional to the needs of the case").

4. ***Producing the material will be extremely burdensome.*** BD says (at 2) the burden of its expansive request is "low" because former counsel has kept the materials. But finding the documents is just the start. BD's proposal, by its terms, would require reviewing, redacting, and logging hundreds or thousands (or more) of pages of responsive information from a case that ended more than a decade ago—and to do so line by line, to separate TELA Bio's information from information LifeCell or the other litigating parties saw as their own. BD's focus on TELA Bio's "own statements" does not mitigate the burden: The *LifeCell* case was about LifeCell's trade-secret allegations, so TELA Bio's interrogatory answers, its witnesses' testimony, and the expert reports all engage with information LifeCell claimed as proprietary. TELA Bio's "own statements" and LifeCell's asserted secrets are intertwined. Moreover, they cannot be reliably untangled now—more than a decade after the fact. We understand from TELA Bio's former counsel that they no longer have the records needed to trace who designated what, or why, more than ten years ago. So any redaction effort would be guesswork that risks violating a court order.

5. ***BD's own request for the LifeCell documents does not seek pre-2020 documents.*** While BD is correct (at 2) that the parties agreed to "consider individual requests for information predating January 2020," BD's LifeCell request—Request No. 46—does not actually seek information before that date. We pointed out that problem in our objections months ago, and BD has chosen not to correct it—despite BD's stated preference to conduct discovery only "through formal channels." Email from M. Baer to M. Reade et al. (June 22, 2026, 9:48 PM).

* * *

Despite the many objectionable features of BD's request and its facial defects, we devised a compromise intended to satisfy BD while avoiding the enormous burdens and procedural complications that BD's current request would impose. We gathered more information about the *LifeCell* matter at your request—itself a large burden, given how old it is and how much memories have faded. We have met and conferred with you several times. And we have offered to give BD the substantive information it claims to seek through written corporate testimony.

While BD derides TELA Bio's compromise proposal (at 2) as a "written narrative prepared by counsel,"[2] a Rule 30(b)(6) response by TELA Bio would be TELA Bio's testimony, would bind the company, and would give BD what it claims to want without the comity, confidentiality, and burden problems already discussed. If BD's goal were to acquire discoverable evidence rather than to impose huge burden and expense, TELA Bio's offer of

---

[2] This criticism is puzzling for another reason—that BD seeks TELA Bio's *LifeCell* interrogatory responses, which are no less "written narrative[s] prepared by counsel."

compromise would be worth considering or at least exploring—particularly given the age and irrelevance of what BD seeks.

Instead, BD has rejected TELA Bio's compromise offer out of hand, instead choosing to stand on a blanket request for all TELA Bio interrogatory responses and transcripts, and all expert reports—imposing on TELA Bio the burden of redacting and logging countless pages of documents from a more than decade-old lawsuit—without any showing that those documents are likely to be relevant, noncumulative, and proportional to the needs of the case. BD admits (at 2), in fact, that it has no interest in "the trade-secret merits of the *LifeCell* case," which is what the whole case was about.

TELA Bio's offer of compromise, which is contingent on BD's withdrawal of its burdensome and irrelevant request, will remain open this week. We are glad to discuss it should BD wish to engage productively. We have offered that compromise solely to try to resolve this matter amicably. To be clear, we disagree that there is no "burden of collection" or that the materials have even remote relevance to the case.

While we appreciate BD's "proposed path forward," which at least recognizes that the state court is the proper forum for a dispute over the *LifeCell* protective order, BD ignores the realities here that make the process it proposes impossible. Neither we nor our client can access or review the *LifeCell* documents, because TELA Bio's former counsel understands the state court order to prevent their disclosure to us. And as we have noted, the documents are "rife with information that LifeCell designated or purported to regard as its own trade secrets." Letter from M. Reade to S. Musser at 1 (Sept. 9, 2026). Because so much time has passed, no record remains that would enable us or TELA Bio's former counsel to trace the provenance of confidentiality designations that are well over a decade old—or to otherwise reliably distinguish information that only TELA Bio regarded as confidential from information that LifeCell or other parties treated as their own confidential information. Indeed, as I have noted, the *LifeCell* case involved individual defendants, too—whose own rights under the state court's order would also need to be accounted for, but whom BD's proposal ignores. And we are presently aware of no document in the categories BD seeks that is not designated as confidential under the state court's protective order. If we learn otherwise, we commit to inform you promptly, review those non-confidential materials, and share what, if any, offer of production we can and are willing to make with respect to them.

Finally, while BD is free to apply to the state court to undo its protective order, TELA Bio will not join that request. The material BD seeks is irrelevant, and the *LifeCell* parties had a legitimate expectation that the materials they exchanged would be used for purposes of that litigation only. As BD's own cited authority explains, "[t]he extent to which a party can rely on a protective order should depend on the extent to which the order induced the party to allow discovery or to settle the case. For instance, reliance would be greater where a trade secret was involved." *Pansy*, 23 F.3d at 790 (quoting *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475-76 (9th Cir. 1992)). The state court confirmed that the *LifeCell* case was "a sealed record" for that precise reason—because of "the allegations of misuse of trade secrets and proprietary

information" at issue. *LifeCell Corp. v. TELA Bio, Inc.*, 2015 WL 4082323, at *1 (N.J. Super. Ct. Ch. Div.).

We are available to meet and confer on this subject this week if that would be useful.

Sincerely,

*/s/ Matthew D. Reade*

Matthew D. Reade
*Counsel for TELA Bio, Inc.*