# Exhibit 1

Joseph J. Fleischman, Esq. (Attorney Id No. 283751972)
Robert Mahoney, Esq. (Attorney Id No. 20061985)
**NORRIS McLAUGHLIN & MARCUS, P.A.**
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807-5933
(908) 722-0700

David J. Wolfsohn, Esq. *(Admitted Pro Hac Vice)*
**Duane Morris LLP**
30 South 17th Street
Philadelphia, PA 19103-4196

*Attorneys for Defendants*

| | |
|---|---|
| LIFECELL CORP.,<br><br>Plaintiff,<br><br>v.<br><br>TELA BIO, INC.,<br>ANTONY KOBLISH,<br>MAARTEN PERSENAIRE,<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>SOMERSET COUNTY-CHANCERY<br>DIVISION, GENERAL EQUITY PART<br><br>Docket No. SOM-C-12013-15<br><br>***Civil Action*** |

**RESPONSES AND OBJECTIONS TO PLAINTIFF'S**
**FIRST SET OF INTERROGATORIES TO TELA BIO, INC.**

Defendant TELA Bio, Inc., ("TELA Bio"), by and through its undersigned attorneys, hereby responds and objects to Plaintiff's First Set of Interrogatories dated July 7, 2015 as set forth below.

Dated: September 23, 2015

By: /s/ David J. Wolfsohn
David J. Wolfsohn, Esq. *(Admitted Pro Hac Vice)*
**Duane Morris LLP**
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1866

Joseph J. Fleischman, Esq. (Attorney Id No. 283751972)
Robert Mahoney, Esq. (Attorney Id No. 20061985)
**NORRIS McLAUGHLIN & MARCUS, P.A.**
721 Route 202-206, Suite 200
P.O. Box 5933
Bridgewater, NJ 08807-5933
(908) 722-0700

*Attorneys for Defendants TELA Bio, Inc.,*
*Antony Koblish, and Maarten Persenaire*

## GENERAL OBJECTIONS

1. The following responses are made without in any way waiving or intending to waive:

   a. All questions as to competency, relevancy, materiality, privilege and admissibility as evidence for any purpose, of the responses or subject matter thereof, in any subsequent proceeding in, or the trial of, this or any other action;

   b. The right at any time to the use of any of said responses, or their subject matter, in any subsequent proceeding in this or in any other action;

   c. The right to object on any ground at any time to a demand for further response to this or any other request for production of documents and statements or other discovery procedures involving or relating to the subject matter of these Interrogatories, and,

   d. The right at any time to revise, correct, add to, or clarify any of the responses herein.

2. TELA Bio objects to each and every interrogatory to the extent it seeks to discover information protected by work product or privilege, as defined by statute, rule or common law.

3. TELA Bio objects to the extent any interrogatory seeks information not in the custody, possession or control of TELA Bio.

4. TELA Bio objects to the extent any interrogatory seeks to impose an obligation to respond beyond that required by New Jersey Rules of Civil Procedure.

5. TELA Bio objects to each and every interrogatory to the extent that any such interrogatory is overly broad, not reasonably calculated to lead to the discovery of admissible evidence, and seeks work product and privileged information or information prepared in anticipation of litigation.

6. Any answers using the phrase "see expert reports" or referring the Propounding Party to expert reports shall not be deemed as an adoptive admission of the statements contained

therein pursuant to Sallo v. Sabitino, 146 N.J. Super. 416 (App. Div. 1976), certif. denied, 75 N.J. 24 (1977).

7. TELA Bio objects to the definitions of "TELA BIO" and "YOU" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

8. TELA Bio objects to the definitions of "FORTUNA," "LIFECELL," and "MESYNTHES" as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

9. These General Objections are hereby incorporated in all of the responses set forth below.

## ANSWERS AND SPECIFIC OBJECTIONS

**Subject to and without waiving any of the foregoing general objections, the specific objections set forth below, or any other defenses in this action, TELA Bio, Inc., responds to Plaintiff's First Set of Interrogatories as set forth below. TELA Bio, Inc., reserves the right to amend and supplement its responses through discovery within the time permitted by the Rules of Court and/or any future case management order.**

1. Identify all former LIFECELL employees who have ever worked for or with YOU, whether formally or informally, including as a contractor or consultant, and, for each such individual identify the dates when that individual worked for or with YOU.

**ANSWER:**

| Individual | Relationship | Titles held | Dates Title held |
|---|---|---|---|
| Bakewell, Amy | Consultant | Consultant | 16AUG2014-18AUG2014 |
| Benhamida, Karim | Employee | Territory Manager | 08SEP2014-present**** |
| Beniker, Dan | Employee | Director – Research<br><br>Intellectual Property Counsel | 01MAY2013-30JUN2014<br><br>01JUL2014-present**** |
| Bockes, Kent | Consultant | Consultant | 10JUN2013-16JUN2014 |
| Brown, Stephen | Consultant | Consultant | 16AUG2014-18AUG2014 |
| Bull, Robert (Ted) | Employee | Territory Manager | 23FEB2015-present**** |
| Carey, Brian | Employee | Territory Manager | 23FEB2015-present**** |
| Cerullo, Elizabeth | Employee | Manager, Clinical Research | 04AUG2014-present**** |
| Gallagher, Kristin | Consultant | Consultant | 16AUG2014-18AUG2014 |

| Individual | Relationship | Titles held | Dates Title held |
|---|---|---|---|
| Gorman, James | Employee<br><br>Consultant | Sr. Vice President-Commercial Development<br><br>Consultant | 15SEP2014-31DEC2014<br><br>01JAN2015-31MAY2015 |
| Guilfoil, Thomas | Employee | Territory Manager | 23FEB2015-1SEPT2015 |
| Horst, Scott | Consultant | Consultant | 28MAR2014-27MAY2014 |
| Kibalo, Benjamin | Employee | Manager, Operations Technical Services | 13JUN2013-present**** |
| Klein, David | Employee | Territory Manager | 23FEB2015-present**** |
| Lansinger, William | Employee | Territory Manager | 23FEB2015-present**** |
| Long, Finlay | Employee | Territory Manager | 13OCT2014-present**** |
| Lothamer, Philip | Employee | Territory Manager | 23FEB2015-present**** |
| McQuillan, David | Consultant<br><br>Employee | Consultant<br><br>Chief Science Officer | 30APR2012-03DEC2012<br><br>04DEC2012-16JUNE2015 |
| Nag, Abhijit | Consultant | Consultant | 11SEP2013-11SEP2014 |
| Pinto, Steve | Consultant | Consultant | 16AUG2014-18AUG2014 |
| Peterson, Derek | Consultant | Consultant | 16AUG2014-18AUG2014 |
| Pugh, Anne | Consultant | Consultant | 16AUG2014-18AUG2014 |
| Richer, Melanie | Employee | Territory Manager | 13OCT2014-present**** |
| Rhodes, Sharon | Employee | Territory Manager | 23FEB2015-01AUG2015 |
| Roberts, Darryl | Employee | Sr. Vice President – Operations | 30APR2013-present**** |
| Sanders, Brian | Employee | Territory Manager | 23FEB2015-present**** |
| Schreiber, Seth | Employee | Territory Manager | 23FEB2015-present**** |
| Seifert, Kris | Consultant | Consultant | 16AUG2014-18AUG2014 |
| Sermersheim, Julie | Employee | Territory Manager | 23FEB2015-01AUG2015 |
| Snowden, Rene | Employee | Vice President – Strategic Marketing | 09MAY2014-present**** |
| Sun, Wendell | Consultant | Consultant | 01APR2013-28JAN2015 |
| Talmo, Paul | Employee | Vice President – Commercial Development | 04FEB2014-present**** |
| Tawil, Jamal | Employee | Territory Manager | 23FEB2015-present**** |

* Based in TELA Bio offices in Malvern, PA
** Based in personal home office in NJ
*** Based in personal home office in MD
**** On garden leave effective June 16, 2015

2. For each former LIFECELL employee listed below identify and describe in detail all legal and factual bases for YOUR contention, if any, that the individual has not breached his/her non-competition covenant with LIFECELL:

(a) David McQuillan
(b) Darryl Roberts
(c) Wendell Sun
(d) Jerome Connor

(e) Jim Gorman
(f) Phil Lothamer
(g) Finlay Long
(h) Karim Benhamida
(i) Tom Guilfoil
(j) Bill Lansinger
(k) Brian Sanders
(l) Julie Sermersheim
(m) Jay Tawil
(n) Brian Carey
(o) David Klein
(p) Ted Bull
(q) Seth Schreiber
(r) Sharon Rhodes
(s) Rene Snowden
(t) Paul Talmo
(u) Kent Bockes
(v) Brian Gorman
(w) Melanie Richer
(x) Abhijit Nag
(y) Elizabeth Cerullo
(z) Ben Kibalo

**ANSWER:** TELA Bio objects to this interrogatory to the extent that it calls for attorney work product. TELA Bio is not required, at this juncture—well in advance of the conclusion of fact discovery—to provide the "legal bases" for any of its contentions. TELA Bio objects to this interrogatory on the ground that discovery is ongoing. TELA Bio objects to this interrogatory on the ground that LifeCell has the burden of proof on the issues raised by this interrogatory and it has not set forth its contentions about why it believes the listed persons have breached their alleged agreements with LifeCell. TELA Bio has no obligation to prove a negative and, at the least, LifeCell should formally commit to the facts it believes prove any breach before TELA Bio should have to respond. Subject to and without waiver of the foregoing objections and the general objections, TELA Bio answers as follows:

While more information on this issue will be sought in discovery, it appears that LifeCell had, at best, a lax practice of enforcing its restrictive covenants. Indeed, it appears that the routine practice was to permit former employees to work for direct competitors during the term of the noncompete, thereby informing the work force that restrictive covenants would not be enforced. By way of example only, see the emails between Darryl Roberts and Richard Traynor on this subject. For further information, see the emails produced already by TELA Bio in discovery on the subject of waivers. TELA Bio also believes that LifeCell was aware that its former employees would be working at, or consulting for, TELA Bio, yet it said nothing until it decided to bring this lawsuit to stifle competition and attempt to buy TELA Bio. Where an employer raises no objections to and acquiesces in an employee going to work for a potential competitor, the employer waives the right to later claim a breach of the applicable restrictive covenant.

Putting aside whether any of the noncompetes are valid, TELA Bio is unaware of any loss that might arguably have been suffered by LifeCell as a result of the alleged breach of the noncompetes. To the contrary, since no TELAMax was ever sold, TELA Bio never actually competed with LifeCell in the marketplace. Nor has LifeCell identified any such alleged loss in discovery or produced any documents in support of such a contention. Accordingly, even if any of the noncompetes were valid, they were not breached.

Moreover, while discovery is ongoing and TELA Bio's exploration of this issue is incomplete, the purchase of LifeCell by Acelity/Apax, and Apax's strategy of loading the company with onerous debt, stripping the company of its R&D talent and other valuable employees, and then preparing the company for a public offering to try and reap profits for Apax resulted in a toxic culture of fear and intimidation that has also been described as a cancer on the organization. Given such a hostile environment, the purported restrictive covenants were not valid and therefore could not be "breached."

Nor has LifeCell established consideration for each restrictive covenant. Discovery is ongoing concerning whether each applicable restrictive covenant was supported by adequate consideration to be potentially enforceable.

With respect to Mr. Talmo, TELA Bio believess that, during the last 24 months of Mr. Talmo's employment with LifeCell (at a minimum), all of his work and performance goals were related to LifeCell's perfusion assessment business, particularly with the SPY *Elite*® System that is the subject of a distribution agreement between LifeCell and Novadaq that terminated in 2014, and not the hernia mesh business of LifeCell. Accordingly, TELA Bio believes that restrictions on Mr. Talmo's ability to work for a hernia mesh device company are overly broad and not necessary to protect a legitimate business interest of LifeCell.

With respect to Jim Gorman and Rene Snowden, they were hired by TELA Bio after their respective non-compete periods had ended.

With regard to Elizabeth Cerullo, LifeCell has not produced any agreement with a restrictive covenant pertaining to her, and TELA Bio is unaware of any noncompete covenant that might arguably apply to her.

With respect to Paul Talmo, Rene Snowden and Jim Gorman, all three of these individuals were coldly terminated by LifeCcell after years of success in building the business. In the case of Mr. Gorman, he was terminated on his first day back after extended medical leave. These callous actions contributed to the sense of fear and intimidation within the work force and especially destabilized the sales force, driving high turnover in the organization.

With respect to Abhijit Nag, Mr. Nag retired from LifeCell over five years ago and was not subject to a non-compete; he was free to provide consulting services.

With regard to Mr. Kibalo, his agreement with LifeCell provides for a noncompete expiring one year from Mr. Kibalo's cessation of employment at LifeCell. Mr. Kibalo's

employment with LifeCell ended in September 2010. TELA Bio hired Mr. Kibalo in 2013, long after his non-compete covenant in favor of LifeCell expired by its terms in September 2011.

With respect to the sales representatives, other than those in California, where noncompetes are not enforceable, they were all placed in territories different from the ones they served while working at LifeCell. The noncompetes are not enforceable to the extent they purport to limit an employee's ability to work in his or her profession nationwide.

With respect to Brian Gorman, LifeCell has not produced any restrictive covenant between it and Mr. Gorman. TELA Bio believes he was never a LifeCell employee.

With regard to Jerome Connor, he never worked for TELA Bio.

3. For each of the individuals listed in interrogatory number 2, identify the date upon which YOU first learned of his/her non-competition covenant with LIFECELL.

**ANSWER:** TELA Bio objects to this interrogatory on the ground that LifeCell has not presented evidence that any noncompetes were supported by consideration, are valid, or are enforceable. Subject to and without waiver of the foregoing objections and of the general objections, and without conceding that any purported noncompete is valid or enforceable, TELA Bio answers as follows:

(a) David McQuillan – October 8, 2012
(b) Darryl Roberts – On or about January 15, 2013
(c) Wendell Sun – On or about March 11, 2015
(d) Jerome Connor – On or about January 4, 2013
(e) Jim Gorman – September 13, 2013
(f) Phil Lothamer – On or about May 8, 2013
(g) Finlay Long – On or about April 17, 2014
(h) Karim Benhamida – On or about March 11, 2015 (filing of LifeCell complaint)
(i) Tom Guilfoil – On or about October 15, 2014
(j) Bill Lansinger – On or about November 5, 2014
(k) Brian Sanders – On or about October 23, 2014
(l) Julie Sermersheim – On or about May 8, 2014
(m) Jay Tawil – On or about May 8, 2014
(n) Brian Carey – On or about July 20, 2014
(o) David Klein – On or about May 8, 2014
(p) Ted Bull – On or about March 2, 2015
(q) Seth Schreiber – On or about May 14, 2014
(r) Sharon Rhodes – On or about August 4, 2014
(s) Rene Snowden – On or about January 10, 2014
(t) Paul Talmo – January 24, 2014
(u) Kent Bockes – Approximately April – May 2013 (verbal)
(v) Brian Gorman – TELA Bio does not understand LifeCell to be alleging that Brian Gorman ever had a noncompete with LifeCell.
(w) Melanie Richer – On or about June 30, 2014

(x) Abhijit Nag – On or about August 6, 2013
(y) Elizabeth Cerullo – TELA Bio is unaware of any non-compete covenant for Ms. Cerulo.
(z) Ben Kibalo – On or about May 8, 2013, Mr. Kibalo provided TELA Bio with an agreement between his then-employer Acell and his immediately preceding employer LifeCell, which agreement stated that Mr. Kibalo's LifeCell non-compete expired in September 2011. Prior to the filing of LifeCell's complaint against TELA Bio in March 2015, TELA Bio had never seen Mr. Kibalo's purported non-compete covenant agreement with LifeCell.

4. For each former LIFECELL employee listed below identify and describe in detail all legal and factual bases for YOUR contention, if any, that the individual has not breached his/her non-solicitation covenant with LIFECELL:

(a) David McQuillan
(b) Darryl Roberts
(c) Wendell Sun
(d) Jerome Connor
(e) Jim Gorman
(f) Phil Lothamer
(g) Finlay Long
(h) Karim Benhamida
(i) Tom Guilfoil
(j) Bill Lansinger
(k) Brian Sanders
(l) Julie Sermersheim
(m) Jay Tawil
(n) Brian Carey
(o) David Klein
(p) Ted Bull
(q) Seth Schreiber
(r) Sharon Rhodes
(s) Rene Snowden
(t) Paul Talmo
(u) Kent Bockes
(v) Brian Gorman
(w) Melanie Richer
(x) Abhijit Nag
(y) Elizabeth Cerullo
(z) Ben Kibalo

**ANSWER:** See the answer and objections to Interrogatory 2, which are incorporated herein by reference. By way of further answer, LifeCell has not formally set forth how it believes the above-listed persons violated any alleged nonsolicitation clause. The discovery conducted thus far suggests that most if not all of the employees who were arguably "solicited" were about to be fired, laid off or about to quit anyway. In addition, discovery will be conducted with regard to the extent to which those former LifeCell employees hired by TELA Bio would

have been fired, laid off, or would have quit regardless of any alleged "solicitation." To the extent that is the case, any purported "solicitation" would be immaterial, and therefore any otherwise valid or enforceable nonsolicitation clause would not be breached. Discovery will also be conducted on the question of whether each LifeCell employee received consideration for the restrictive covenant.

With Regard to Mr. Connor, he never worked for TELA Bio, nor did he solicit anyone on TELA Bio's behalf.

With respect to Brian Gorman, no nonsolicitation agreement with LifeCell has been produced by LifeCell. Accordingly, TELA Bio does not understand him to have ever worked for LifeCell, much less have signed a nonsolicitation clause with LifeCell.

As for Mr. Kibalo, his agreement with LifeCell does not specify a duration for his non-solicitation covenant. TELA Bio hired Mr. Kibalo in June 2013, 33 months after he left LifeCell. Restraints that are unlimited as to time are unreasonable and therefore unenforceable. *Ingersoll Rand Co. v Ciavatta*, 110 N.J. 609, 626-27 (N.J. 1988). Even if the court decided to "blue pencil" in a reasonable time limitation to Mr. Kibalo's non-solicitation covenant, a reasonable time limitation would not extend to the 33 month period necessary to reach Mr. Kibalo's hiring date with TELA Bio. Therefore, TELA Bio believes that Mr. Kibalo's non-solicitation covenant in favor of LifeCell was not enforceable at the time it hired him in June 2013.

5. For each of the individuals listed in interrogatory number 4, identify the date upon which YOU first learned of his/her non-solicitation covenant with LIFECELL.

**ANSWER:** The following dates are estimates only based for the most part on persons' best recollection. TELA Bio reserves its right to amend these answers in the event that additional review of email suggests the dates may have been different.

(a) David McQuillan – October 8, 2012
(b) Darryl Roberts – On or about January 15, 2013
(c) Wendell Sun – On or about March 11, 2015
(d) Jerome Connor – On or about January 4, 2013
(e) Jim Gorman – September 13, 2013
(f) Phil Lothamer – On or about May 8, 2013
(g) Finlay Long – On or about April 17, 2014
(h) Karim Benhamida – On or about March 11, 2015 (filing of LifeCell complaint)
(i) Tom Guilfoil – On or about October 15, 2014
(j) Bill Lansinger – On or about November 5, 2014
(k) Brian Sanders – On or about October 23, 2014
(l) Julie Sermersheim – On or about May 8, 2014
(m) Jay Tawil – On or about May 8, 2014
(n) Brian Carey – On or about July 20, 2014
(o) David Klein – On or about May 8, 2014
(p) Ted Bull – On or about March 2, 2015
(q) Seth Schreiber – On or about May 14, 2014

(r) Sharon Rhodes – On or about August 4, 2014
(s) Rene Snowden – On or about January 10, 2014
(t) Paul Talmo – January 24, 2014
(u) Kent Bockes – Approximately April – May 2013 (verbal representation by Kent Bockes to Antony Koblish)
(v) Brian Gorman – To the best of TELA Bio's knowledge, Brian Gorman never worked for LifeCell.
(w) Melanie Richer – On or about June 30, 2014
(x) Abhijit Nag – On or about August 6, 2013
(y) Elizabeth Cerullo – TELA Bio is unaware of any non-solicitation covenant for Ms. Cerullo.
(z) Ben Kibalo – On or about May 8, 2013, TELA Bio learned of his LifeCell non-compete that expired in September 2011 through correspondence with Mr. Kibalo's then-current employer Acell. Acell is a competitor of LifeCell's.

6. For each former LIFECELL employee listed below identify and describe in detail all legal and factual bases for YOUR contention, if any, that the individual has not breached his/her invention disclosure and assignment covenant with LIFECELL:

(a) David McQuillan
(b) Darryl Roberts
(c) Wendell Sun
(d) Jerome Connor
(e) Abhijit Nag
(f) Ben Kibalo

**ANSWER:** TELA Bio objects to this interrogatory to the extent that it calls for attorney work product. TELA Bio is not required, at this juncture—well in advance of the conclusion of fact discovery—to provide the "legal bases" for any of its contentions. TELA Bio objects to this interrogatory on the ground that discovery is ongoing, and LifeCell has not yet produced information supporting its claims. TELA Bio objects to this interrogatory on the ground that LifeCell has not articulated why it believes the invention disclosure and assignment covenants for these individuals have been breached. It is LifeCell's burden to prove any such alleged breach, and TELA Bio is not required to prove a negative. Among other things, assuming for present purposes that these agreements are valid, it is LifeCell's burden to identify the particular "Contributions" and "Inventions" that it contends are subject to any agreements at issue. To date, LifeCell has refused to do so. In particular, LifeCell has refused to identify any highly specialized, current information that is not known in the industry, or that any such information was created or stimulated by the research environment furnished by LifeCell, that it contends is covered by the invention assignment clauses. To the contrary, in other context—the alleged "trade secrets"—everything identified by LifeCell is well known in the industry, often because LifeCell itself publicized it, or because the techniques and processes at issue have been known for decades. At bottom, LifeCell is seeking to monopolize techniques and processes that are in the public domain, in an effort to enrich its private equity owners.

Subject to and without waiver of the foregoing objections and of the general objections, TELA Bio answers as follows.

The invention assignment clauses are not valid. As apparently construed by LifeCell, they are an attempt to monopolize techniques and processes that LifeCell does not own, that LifeCell itself chose to make publicly available, that were developed/invented by others, that were stolen by LifeCell, that are being passed off as LifeCell's when they are not its intellectual property, that are in the public domain, and/or that are part of the knowledge and experience of the listed individuals that they are permitted to take with them from job to job—just as those persons brought their preexisting knowledge and skills to LifeCell for LifeCell's benefit. In addition, the provisions of the Confidentiality, Assignment of Contributions and Inventions, Non-Competition, and Non-Solicitation Agreement relating to assignment of contributions and inventions, including but not limited to the provisions purporting to extend the obligations to assign contributions and inventions post-employment, are overbroad in terms of time, geography and scope of activities prohibited, do not protect any legitimate business interest of LifeCell, do not comport with the public interest, and are otherwise unenforceable. *Ingersoll-Rand Co. v. Ciavatta*, 542 A.2d 879, 886 (N.J. 1988) ("Courts, however, will not enforce invention assignment contracts that unreasonably obligate an employee in each and every instance to transfer the ownership of the employee's invention to the employer."; concluding that "on the facts of this case, Ingersoll-Rand is not entitled to an assignment of the patent on Ciavatta's friction stabilizer. We find that Ingersoll-Rand has not substantiated that Ciavatta invented his friction stabilizer in violation of his contractual obligation under the holdover clause. Ingersoll-Rand has not established that Ciavatta 'conceived' of his invention as a result of his employment at Ingersoll-Rand"); *see also Saccomanno v. Honeywell Int'l, Inc.*, 2010 N.J. Super. Unpub. LEXIS 740 (N.J. Super. Ct. Apr. 7, 2010) (approving of trial court's blue-penciling of overbroad invention assignment agreement).

As noted above, LifeCell has not specifically identified anything it believes to be a "Contribution" or "Invention" under the agreements, nor has it specifically explained why it believes there were any breaches. In the context of its trade secrets claim, however, it has identified certain formulas and processes, but, in fact, those formulas and processes are not trade secrets. To the extent that LifeCell is arguing that the techniques and processes that it claims are trade secrets are also "Inventions" or "Contributions," such contentions would fail for the same reasons identified by TELA Bio during the preliminary injunction proceedings.

By way of further response, TELA Bio incorporates by reference its answer to Interrogatory 2 insofar as materiality and harm are concerned.

Discovery will be conducted on whether consideration was provided by LifeCell in connection with any Contribution and Invention agreements.

TELA Bio reserves its right to supplement these responses in the event that LifeCell ever specifically identifies applicable "Inventions" or "Contributions," or explains, based on the record, how there were any "breaches," and based on additional discovery. In particular, TELA Bio expects that discovery may show that a number of equitable doctrines—unclean hands, laches—would bar any relief that LifeCell seeks under the invention assignment clauses.

7. For each of the individuals listed in interrogatory number 6, identify the date upon which YOU first learned of his/her invention disclosure and assignment covenant with LIFECELL.

**ANSWER:**

(a) David McQuillan – TELA Bio became aware of such a covenant in Mr. McQuillan's consulting agreement with KCI on October 8, 2012. The document that LifeCell argues contains such a covenant was superseded by the KCI agreement.
(b) Darryl Roberts – TELA Bio is unaware of any such covenant. The document that LifeCell argues contains such a covenant was superseded by the KCI agreement.
(c) Wendell Sun – Upon receiving and reviewing the complaint, after March 11, 2015 (filing of LifeCell complaint).
(d) Jerome Connor – TELA Bio is unaware of any such covenant with LifeCell. The document that LifeCell argues contains such a covenant was superseded by the KCI agreement.
(e) Abhijit Nag – On or about August 6, 2013
(f) Ben Kibalo – TELA Bio is unaware that any such covenant was in place when it hired Mr. Kibalo. TELA Bio notes that Mr. Kibalo's agreement filed with the complaint provides that this covenant expired by its terms in March 2011, six months after Mr. Kibalo left LifeCell in September 2010. Mr. Kibalo was working at Acell, a competitor of LifeCells, before he worked at TELA Bio.

8. Identify all current or former LifeCell employees that have provided any information or ideas to YOU, whether directly, through David McQuillan, or through another source.

**ANSWER:** TELA Bio objects to this interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and the general objections, TELA Bio has already produced massive amounts of information to LifeCell from which LifeCell can determine for itself whether it believes any communications from former LifeCell employees involved anything actionable. Despite this massive production, which took place in March and April, LifeCell has not identified any particular Inventions or Contributions that it contends form the basis for any of its purported causes of action. Nor has LifeCell identified any highly specialized, current information that is not known in the industry, and that was created or stimulated by the research environment furnished by LifeCell, that it contends is actionable. To the extent that LifeCell has identified purported trade secrets, TELA Bio has already produced responsive documents, and is preparing to produce additional documents based on a reasonable search.

9. For each of the individual listed in interrogatory number 8, including Dr. John Harper, identify the content of any information or ideas provided to YOU and the date on which the information and/or idea was provided to YOU.

**ANSWER:** See the objections and answer to Interrogatory 8, which is hereby incorporated by reference.

10. Identify all TISSUE MATRIX PRODUCTS developed by (whether in whole or in part), in the process of being developed by (whether in whole or in part), or otherwise in the product pipeline of TELA BIO.

**ANSWER:** Other than TELAMax, which LifeCell is obviously aware of, TELA Bio will identify other products when and if the decision to commercialize any such products has been made.

11. For each TISSUE MATRIX PRODUCT identified in response to interrogatory number 10, identify (a) the date on which development of that product began, whether at TELA BIO or elsewhere, (b) the date on which development of that product began at TELA BIO, (c) all individuals involved in the development of that product, (d) the beginning and end dates of each individual's involvement in the development of that product, and (e) the contribution of and/or role of each individual in the development of the product.

**ANSWER:** TELA Bio objects to this interrogatory on the ground that it is overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and of the general objections, TELA Bio answers as follows. With regard to TELAMax, TELA Bio has already produced numerous responsive documents. With regard to other potential products, TELA Bio will produce document sufficient to describe the product, the processes, formulas, protocols, and equipment involved in its manufacture, and the persons involved if and when the decision to commercialize any such products has been made.

12. For each TISSUE MATRIX PRODUCT identified in response to interrogatory number 10 identify (a) all products sampled, distributed, or sold to date, (b) the persons or entities to whom each product was sampled, distributed, or sold, (c) the date of each sampling, distribution, or sale to each individual or entity, (d) the quantity of each product sampled, distributed, or sold on a person-by-person or entity-by-entity basis, as the case may be, and (e) all documentation, literature, or information distributed in connection with each sampling, distribution, or sale.

**ANSWER:**

Products Sampled & Implanted

| **Invoice no.** | **Date** | **Customer Name** | **Surgeon** | **Product** | **Description** | **Qty.** | **Price** |
|---|---|---|---|---|---|---|---|
| SI000082 | 5/21/15 | IU Health Methodist Hospital | Dr. Paul Szotek | F10068-0408 | TELAMax | 1 | $0 |
| SI000083 | 5/21/15 | New England Baptist Hospital | Dr. Stephen Ferzoco | F10068-0408 | TELAMax | 5 | $0 |
| SI000084 | 6/1/15 | New England Baptist Hospital | Dr. Stephen Ferzoco | F10069-1822 | TELAMax1 S | 1 | $0 |

| Invoice no. | Date | Customer Name | Surgeon | Product | Description | Qty. | Price |
|---|---|---|---|---|---|---|---|
| SI000085 | 6/1/15 | New England Baptist Hospital | Dr. Stephen Ferzoco | F10068-0408 | TELAMax | 3 | $0 |
| SI000085 | 6/11/15 | New England Baptist Hospital | Dr. Stephen Ferzoco | F10068-0408 | TELAMax | 6 | $0 |
| SI000086 | 6/29/15 | Saint Johns Hospital | Dr. Sherin Towfigh | F10068-1010 | TELAMax | 2 | $0 |

Product Shipped-Not Sampled or Implanted as of August 5, 2015

| Invoice no. | Date | Customer Name | Surgeon | Product | Description | Qty. | Price |
|---|---|---|---|---|---|---|---|
| ISO000038 | 6.1.15 | New England Baptist Hospital | Dr. Stephen Ferzoco | F10068-0408 | TELAMax | 2 | $0 |
| ISO000127 | 6.11.15 | New England Baptist Hospital | Dr. Stephen Ferzoco | F10068-0408 | TELAMax | 6 | $0 |
| SI000087 | 8.5.15 | Beverly Hills Hernia Ctr. | Dr. Sherin Towfigh | F10068-0408 | TELAMax | 5 | $0 |
| SI000087 | 8.5.15 | Beverly Hills Hernia Ctr. | Dr. Sherin Towfigh | F10068-1020 | TELAMax | 3 | $0 |
| SI000087 | 8.5.15 | Beverly Hills Hernia Ctr. | Dr. Sherin Towfigh | F10068-1620 | TELAMax | 3 | $0 |

13. For each TISSUE MATRIX PRODUCT identified in response to interrogatory number 10, identify all marketing activities associated with such product and the date(s) when those marketing activities began.

**ANSWER:** TELA Bio objects to this interrogatory on the ground that it is overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and of the general objections, TELA Bio answers as follows. TELA Bio has produced responsive documents. In addition, TELA Bio is in the process of reviewing additional documents, some of which may be responsive.

14. For each TISSUE MATRIX PRODUCT identified in response to interrogatory number 10, identify all COMMUNICATIONS with any hospitals, surgeons, physicians, or any other medical professional concerning such products, including the date on which each such COMMUNICATION occurred.

**ANSWER:** TELA Bio objects to this interrogatory on the ground that it is overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and of the general objections, TELA Bio answers as follows. With regard to TELAMax, TELA Bio has already produced responsive documents. In addition, TELA Bio is in the process of reviewing additional documents, some of which may be responsive. With regard to other potential products, TELA Bio will produce

responsive documents if and when the decision to commercialize any such products has been made.

15. Identify all applications, filings, and submissions to the FDA or any other government agency (whether, federal, state, or local) by or on behalf of TELA BIO, Maarten Persenaire, Antony Koblish, or David McQuillan concerning any TISSUE MATRIX PRODUCTS, including (a) the date of each such application, filing, and/or submission, (b) the subject matter of each such application, filing, and/or submission, and (c) the TELA BIO product or anticipated product associated with each such application, filing, and/or submission.

**ANSWER:** TELA Bio objects to this interrogatory on the ground that it is overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and of the general objections, TELA Bio answers as follows. With regard to TELAMax, TELA Bio has already produced responsive documents. In addition, TELA Bio is in the process of reviewing additional documents, some of which may be responsive. With regard to other potential products, TELA Bio will produce responsive documents if and when the decision to commercialize any such products has been made.

16. Identify each process, recipe, procedure, material, or other information associated with any TISSUE MATRIX PRODUCT identified in response to interrogatory number 10 that YOU contend is a trade secret of TELA BIO, confidential to TELA BIO, or otherwise not in the public domain.

**ANSWER:** TELA Bio objects to this interrogatory as being overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.

17. Identify all presentations made (both before and after the founding of TELA Bio, Inc.) to potential investors in TELA Bio, Inc., including (a) the dates of those presentations, (b) all people in attendance, (c) who presented, (d) the subject matter discussed by each presenter, and (e) all materials distributed, shown, or discussed in connection with those presentations, whether before, after, or during the presentations.

**ANSWER:** TELA Bio objects to this interrogatory on the ground that it is overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and of the general objections, TELA Bio answers as follows. TELA Bio has produced responsive documents and it is in the process of reviewing additional documents, some of which may be responsive.

18. Identify all presentations made (both before and after the founding of TELA Bio) to any group that included one or more individuals who, at the time of the presentation, were employees of LIFECELL, including (a) the dates of those presentations, (b) all people in attendance, (c) who presented, (d) the subject matter discussed by each presenter, and (e) all materials distributed, shown, or discussed in connection with those presentations, whether before, after, or during the presentations.

**ANSWER:** TELA Bio objects to this interrogatory on the ground that it is overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and of the general objections, TELA Bio answers as follows. TELA Bio has produced responsive documents and it is in the process of reviewing additional documents, some of which may be responsive.

19. Describe in detail TELA BIO's document retention, preservation, and/or destruction policies from TELA BIO's inception to the present, including all changes in such policies over that time period.

**ANSWER:** TELA Bio does not have formal document retention policies.

20. Identify the processes used to make each TISSUE MATRIX PRODUCT identified in response to interrogatory number 10, including the specific details of all methods, equipment, reagents, and solutions used for: (1) raw material processing, including de-muscling, stripping, splitting, and delamination; (2) decellularization; (3) washing and/or chemical disinfection; (4) stitching, (5) packaging; (6) sterilization; and (7) tissue cutting.

**ANSWER:** TELA Bio objects to this interrogatory on the ground that it is overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and of the general objections, TELA Bio answers as follows. TELA Bio has produced numerous responsive documents. In addition, TELA Bio is in the process of reviewing additional documents, some of which may be responsive.

21. For each process identified in response to interrogatory number 20, identify all versions of the process, any changes between versions, the reason(s) for those changes, and the dates those changes were made.

**ANSWER:** TELA Bio objects to this interrogatory on the ground that it is overbroad, unduly burdensome, and not calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and of the general objections, TELA Bio answers as follows. TELA Bio has produced responsive documents. In addition, TELA Bio is in the process of reviewing additional documents, some of which may be responsive.

22. Identify the date on which YOU contend that each of the following of David McQuillan's covenants with LIFECELL expired:

(a) Paragraph 1 of LIFC-TB10000150.
(b) Paragraph 2 of LIFC-TB10000150.
(c) Paragraph 3 of LIFC-TB10000150.
(d) Paragraph 4 of LIFC-TB10000150.
(e) Paragraph 5 of LIFC-TB10000150.
(f) Paragraph 6 of LIFC-TB10000150.
(g) Paragraph 6 of LIFC-TB10000113.
(h) Paragraph 7 of LIFC-TB10000113.
(i) Paragraph 15 of LIFC-TB10000113.
(j) Paragraph 16 of LIFC-TB10000113.

(k) Paragraph 17 of LIFC-TB10000113.
(l) Paragraph 18 of LIFC-TB10000113.

**ANSWER:** TELA Bio objects to this interrogatory on the ground that it calls for a legal conclusion. Subject to and without waiver of the foregoing objections and of the general objections, and without waiver to TELA Bio's position regarding the enforceability of any of these covenants, TELA Bio responds as follows:

February 23, 2010 as to (a) through (f)

As to (g), the consultant has an ongoing obligation to execute assignments of Intellectual Property developed through July 1, 2012, if any, that relate to the consulting services provided. TELA Bio is not aware of any such developments during the consulting term that expired July 1, 2012.

As to (h), continuing obligation.

As to (i), July 1, 2013.

As to (j): (i) with respect to a "Competitive Business" engaged in a business associated with the consulting services provided and geographic areas served by Dr. McQuillan as a consultant under the consulting agreement, July 1, 2013; and (ii) with respect to a "Competitive Business" engaged in a business not associated with the consulting services provided and geographic areas served by Dr. McQuillan as a consultant under the consulting agreement, no non-compete obligation exists. Since Dr. McQuillan did not perform consulting services related to the research, development, processing, marketing, and/or distribution of xenograft tissues to be used for the purpose of human transplantation to repair or promote the healing of soft tissue defects in the hernia or breast applications, TELA Bio does not believe that Section 16 of the consulting agreement restricted Dr. McQuillan's involvement with TELA Bio.

As to (k), July 1, 2012.

As to (l), July 1, 2012.

23. Identify all individuals and/or entities with a financial interest in TELA BIO, the extent of each's interest, and any changes to such interest from the founding of TELA BIO to the present.

**ANSWER:** TELA Bio has produced or will produce documents responsive to this request.

24. Identify all steps, policies, procedures, and/or practices, if any, employed by TELA BIO to prevent the disclosure and/or misuse of third-party confidential information (including LIFECELL information), including confidential information in the possession, custody, or control of new employees, and for each such step, policy, procedure, and/or practice, identify the date(s) on which it was implemented and/or terminated.

**ANSWER:** TELA Bio objects to this interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and of the general objections, TELA Bio answers as follows.

TELA Bio instructed such persons, prior to and after their hiring, to not bring or disclose to, or use while employed at TELA Bio, any confidential information of former employers. Specific examples of such instructions include, but are not limited to, the following:

1. Commencing in December 2012, each employee signed an agreement prior to or upon hire that contained the following provision:

"Former Employer Information. I agree that I will not, while I am an employee, consultant, officer and/or director of [TELA Bio], improperly use or disclose any proprietary information or trade secrets of any former or concurrent employer or other Person, if any, with whom I have an agreement or duty to keep such information or secrets confidential, if any, and that I will not use, disclose or bring onto the premises of [TELA Bio] any unpublished document or proprietary information belonging to any such employer or Person unless consented to in writing by such employer or Person."

2. On February 5, 2015, as part of the hiring process, TELB Bio's HR consultant Jennifer Barretta verbally instructed by separate phone calls with each of the persons set forth below to not bring any confidential information of former employers with them to TELA Bio. TELA Bio's General Counsel Christine Arasin and VP Commercial Development Paul Talmo participated in each of these phone calls.

| | | |
|---|---|---|
| Ted Bull | Sharon Rhodes | Brian Carey |
| Brian Gorman | David Klein | William Lansinger |
| Brian Sanders | Phil Lothamer | Seth Schreiber |
| Julie Sermersheim | Jay Tawill | Tom Guilfoil |

3. On February 18, 2015, the CEO of TELA Bio sent the following email to each of the salespeople it planned to hire from LifeCell:

All,

TELA Bio is very excited that each of you is joining our team next week. We look forward to working with you to build a great company together. From the start of TELA Bio just a few years ago, our goal has been to develop indication-specific implants with exceptional biophysical, biologic and economic performance. We plan to compete in the marketplace based on better product technology and solutions for surgeons, hospitals and their patients.

As you may know, your current employer LifeCell recently expressed concerns to us that TELA Bio may be engaging in, or planning to engage in, unfair competition. We believe that TELA Bio's hiring, development and marketing activities have been legal and appropriate, and we plan to continue to operate in an ethical and legal manner. It is vital for you to follow our instructions as you leave LifeCell to transition to TELA Bio. This will protect both TELA Bio and each of

you from any future allegations of unfair competition, as well as unnecessary legal wrangling over perceptions of impropriety that may arise if you do not follow what we are calling a "clean hands process". By following the "cleans hands" process, you will join TELA Bio next week with no confidential information belonging to LifeCell in your possession.

I know that Jennifer Barretta and Chris Arasin have given you instructions in the past about not keeping any confidential LifeCell information, as well as how to comply with any reasonable contractual non-competition or non-solicitation obligations that you may have to LifeCell. Please continue to abide by their guidance and seek their advice if you have any questions. This goes hand in hand with the "clean hands" process, which is designed to ensure that you (1) do not take any confidential or proprietary information from LifeCell; (2) do not distribute or share it with any TELA Bio personnel; (3) do not use or rely on it once you begin employment with TELA Bio; and (4) promptly return all property belonging to LifeCell when you leave your employer.

To prepare for any possible unfair competition allegations that LifeCell may bring in the future, please take the time **this week** as you wind up your LifeCell matters and prepare to exit the company, to locate and either return or electronically delete materials belonging to LifeCell. If the material is a copy of information that LifeCell has, go ahead and delete it. However, if LifeCell may not already have this information, you should make a copy and return it to them, and then delete it from your device.

To help you in this process, please see the suggestions in the table below for locations to search, as well as examples of materials that you should return or, if the materials are electronic, delete. **This process may involve shipping papers, binders, flash drives or other devices to LifeCell; please mail such materials to LifeCell this week before you start working at TELA Bio. If LifeCell will not pay for or reimburse you for the shipping costs, you can expense those costs to TELA Bio and we will reimburse you. With respect to deleting confidential or proprietary LifeCell information from your home computer, mobile phones or other personal devices, you should also complete this task this week. If you have access to cloud accounts that electronically store confidential LifeCell information, such as Dropbox, please terminate that account or your access to that account this week**. Again, we want each of you to join TELA Bio next week with "cleans hands" so that no appearance of impropriety exists with respect to your contractual obligations to LifeCell.

**WHERE TO LOOK?**

| | | |
|---|---|---|
| Home office | Filing cabinets | Garages, attics, basements |
| Briefcases, backpacks and computer bags | Off-site storage locations | Cars and car trunks |
| Diaries | Calendars | Appointment books |
| iPads (ie Notes, etc.) | Notepads | Address books |

| | | |
|---|---|---|
| Electronic storage (flashdrives, external hard drives, USB sticks) | Cloud storage (including iCloud, Dropbox, etc) | Audio and video tapes, DVDs |
| Computers | Phones | Any other locations where you stored relevant materials |

**EXAMPLES OF ITEMS TO RETURN/DELETE?**

| | | |
|---|---|---|
| Customer lists | Lists of prospective customers | Marketing materials |
| Sales training materials | Competitive analyses | Sales strategies |
| LifeCell product or pricing information | Information about LifeCell product pipeline | Customer contracts |

We also remind you that you may have contractual obligations that restrict you, for a certain period of time, from soliciting LifeCell employees to leave the company. With that in mind, please do not engage in this type of activity. If any LifeCell sales person asks you about obtaining employment at TELA Bio, please inform them that we do not plan to hire additional sales people at this time. As part of your response, you may also tell them that they may contact Jennifer Barretta through LinkedIn if they are interested in learning about the company.

As an additional reminder for those of you who are switching territories due to non-compete restrictions, please do not use confidential LifeCell customer or other information to assist your co-workers who may be assigned to your former LifeCell territory.

If you have any questions or concerns about the requirements set forth above, please call TELA Bio's General Counsel Chris Arasin (267.939.5050) or our HR consultant Jennifer Barretta (203.980.3732).

Thank you for your cooperation!

**Antony Koblish** 1 Great Valley Parkway, Suite 24 Malvern, PA 19355 (Main) 484.320.2930 (direct) 484.320.2922
(mobile) 610.457.5273
(fax) 610.644.3769
akoblish@telabio.com

The CEO of TELA Bio sent a similar email on the same date to each of Brian Gorman, who was then employed at Novadaq, and Phil Lothamer, who was then employed by Sientra.

4. Christine Arasin, TELA Bio's General Counsel, called each of the persons on the dates set forth below to again instruct them to not bring to TELA Bio, or use, any confidential information of former employers, including LifeCell:

| <u>February 19, 2015</u> | <u>February 20, 2015</u> |
|---|---|
| Brian Gorman | Ted Bull |
| Sharon Rhodes | Brian Carey |
| David Klein | Seth Schreiber |
| William Lansinger | Jay Tawill |
| Brian Sanders | Karim Benhamida |
| Phil Lothamer | Finlay Long |
| Seth Schreiber | Rene Snowden |
| Tom Guilfoil | Paul Talmo |
| Julie Sermersheim | |
| Melanie Richer | |

25. Identify all of the "measures to ensure compliance with reasonable restrictions that may apply to the affected individuals" that TELA BIO has implemented, as set forth in Antony Koblish's February 13, 2015 letter to Gaurav Agarwal.

**ANSWER:** TELA Bio objects to this interrogatory as overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and of the general objections, TELA Bio answers as follows.

See response to Interrogatory 24, which is incorporated herein by reference. By way of further answer, except with respect to sales representatives in California, each sales representative was assigned to a sales territory so that there was no overlap between such sales representative's territory for TELA Bio and that covered for LifeCell during such sales representative's prior 12 months of employment with LifeCell.

TELA Bio instructed the former LifeCell sales representatives to not share confidential account information for their sales territory at LifeCell with other TELA Bio sales representatives and employees.

TELA Bio delayed its hiring of Jim Gorman and Rene Snowden until after their respective non-compete obligations with LifeCell had expired by their terms.

TELA Bio had explained to California sales representatives hired from LifeCell how to announce their new job to customers without violating non-solicitation obligations to LifeCell.

26. Identify the dates on which each of the following were members of the board of directors of TELA Bio, Inc.:

(a) Maarten Persenaire
(b) Antony Koblish
(c) Francis Conway
(d) Christine Arasin
(e) Vince Burgess
(f) Adele Oliva
(g) Kevin Rakin
(h) Paul Touhey
(i) Ashley Friedman
(j) Paul Thomas
(k) Wes Kaupinen
(l) Lisa Colleran

**ANSWER:**

(a) Maarten Persenaire – April 17, 2012 – June 25, 2012
(b) Antony Koblish – April 17, 2012 - present
(c) Francis Conway – was never a Board member
(d) Christine Arasin – was never a Board member
(e) Vince Burgess – December 3, 2012 - present
(f) Adele Oliva – June 25, 2012 - present
(g) Kevin Rakin – April 15, 2013 - present
(h) Paul Touhey – June 25, 2012 - present
(i) Ashley Friedman – October 2, 104 - present
(j) Paul Thomas – was never a Board member
(k) Wes Kaupinen – December 3, 2012 – July 31, 2013
(l) Lisa Colleran – was never a Board member

27. Identify the date on which each of the following individuals began working for or with TELA Bio, Inc., whether as a consultant, contractor, employee, or otherwise, and identify the capacity in which TELA Bio, Inc. employed each individual (*e.g.*, consultant, contractor, employee, or otherwise):

(a) David McQuillan
(b) Maarten Persenaire
(c) Antony Koblish
(d) Darryl Roberts
(e) Wendell Sun
(f) Jerome Connor
(g) Jim Gorman
(h) Phil Lothamer
(i) Finlay Long
(j) Karim Benhamida
(k) Tom Guilfoil

(l) Bill Lansinger
(m) Brian Sanders
(n) Julie Sermersheim
(o) Jay Tawil
(p) Brian Carey
(q) David Klein
(r) Ted Bull
(s) Seth Schreiber
(t) Sharon Rhodes
(u) Rene Snowden
(v) Paul Talmo
(w) Kent Bockes
(x) Lisa Colleran
(y) Brian Gorman
(z) Melanie Richer
(aa) Abhijit Nag
(bb) Elizabeth Cerullo
(cc) Ben Kibalo

**ANSWER:** See Answer to Interrogatory No. 1.

28. Identify the date on which each of the following (a) was issued an @telabio.com email address and (b) first began using an @telabio.com email address to send and/or receive email:

(a) David McQuillan
(b) Maarten Persenaire
(c) Antony Koblish
(d) Darryl Roberts
(e) Wendell Sun
(f) Jerome Connor
(g) Jim Gorman
(h) Phil Lothamer
(i) Finlay Long
(j) Karim Benhamida
(k) Tom Guilfoil
(l) Bill Lansinger
(m) Brian Sanders
(n) Julie Sermersheim
(o) Jay Tawil
(p) Brian Carey
(q) David Klein
(r) Ted Bull
(s) Seth Schreiber
(t) Sharon Rhodes
(u) Rene Snowden
(v) Paul Talmo

(w) Kent Bockes
(x) Lisa Colleran
(y) Brian Gorman
(z) Melanie Richer
(aa) Abhijit Nag
(bb) Elizabeth Cerullo
(cc) Ben Kibalo

**ANSWER:** On or about the dates set forth below.

(a) David McQuillan – January 2013
(b) Maarten Persenaire – January 2013
(c) Antony Koblish – January 2013
(d) Darryl Roberts – April 30, 2013
(e) Wendell Sun – never
(f) Jerome Connor – never
(g) Jim Gorman – September 15, 2014
(h) Phil Lothamer – February 23, 2015
(i) Finlay Long – October 13, 2014
(j) Karim Benhamida – September 8, 2014
(k) Tom Guilfoil – February 23, 2015
(l) Bill Lansinger – February 23, 2015
(m) Brian Sanders – February 23, 2015
(n) Julie Sermersheim – February 23, 2015
(o) Jay Tawil – February 23, 2015
(p) Brian Carey – February 23, 2015
(q) David Klein – February 23, 2015
(r) Ted Bull – February 23, 2015
(s) Seth Schreiber – February 23, 2015
(t) Sharon Rhodes – February 23, 2015
(u) Rene Snowden – May 9, 2014
(v) Paul Talmo – February 4, 2014
(w) Kent Bockes – never
(x) Lisa Colleran – never
(y) Brian Gorman – February 23, 2015
(z) Melanie Richer – October 13, 2014
(aa) Abhijit Nag – never
(bb) Elizabeth Cerullo – August 4, 2014
(cc) Ben Kibalo – June 13, 2013

29. On a team-by-team basis, identify the roles and responsibilities of TELA Bio's Pre-Clearance Commercial Team, Commercial Development Team, Sales Team, and Marketing Team, as referenced in TB00096641, identify all individuals who have ever been members of that team, and for each such member, identify the beginning and end dates of that individual's membership of that team.

**ANSWER:** TELA Bio has produced or will produce responsive documents.

30. Identify and describe in detail all business decisions TELA Bio has made as a result of the Court's May 8, 2015 order granting Plaintiff's Application for Preliminary Injunctive Relief, including identification and description of any planned changes to any TISSUE MATRIX PRODUCT identified in response to interrogatory number 10 and any planned changes to any processes used to make any TISSUE MATRIX PRODUCT identified in response to interrogatory number 20, and the extent to which any such changes have been implemented.

**ANSWER:** TELA Bio objects to this request to the extent that it calls for information protected by the attorney-client privilege, work product doctrine, or other applicable privilege or immunity. TELA Bio further objects to this request on the ground that it is overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing objections and the general objections, TELA Bio answers as follows: TELA Bio has terminated or placed on garden leave any former LifeCell Employees. TELA Bio has also begun exploring the development and eventual sale of other products. With regard to other potential products, TELA Bio will produce responsive, nonprivileged documents if and when the decision to commercialize any such products has been made.

31. Identify all DOCUMENTS and things designed, developed, created, or modified (in whole or in part) by LIFECELL that are in YOUR possession, custody, or control, and/or that have been provided to MESYNTHES.

**ANSWER:** TELA Bio objects to this interrogatory as being vague, ambiguous, overbroad and not reasonably calculated to lead to the discovery of admissible evidence. Subject to and without waiver of the foregoing general and specific objections, TELA Bio has produced responsive, nonprivileged documents that relate to the issues in this case. TELA Bio is also in the process of searching for additional responsive documents related to the issues in the case and, in the event such additional nonprivileged documents are located, they will be produced. With regard to potential products, TELA Bio will produce responsive, nonprivileged documents if and when the decision to commercialize any such products has been made.

32. Identify all DOCUMENTS and things concerning FORTUNA, including DOCUMENTS and things designed, developed, created, or modified (in whole or in part) by FORTUNA in YOUR possession, custody, control, and/or that have been provided to MESYNTHES, and all COMMUNICATIONS with or concerning FORTUNA.

**ANSWER:** After a reasonable search of documents, TELA Bio is not aware of any such documents. TELA Bio continues to search documents and is using "Fortuna" as a search term. In the event that nonprivileged, responsive documents are found, they will be produced.

**CERTIFICATION**

I certify that the foregoing statements, to the extent factual, are true to the best of my knowledge, information, and belief. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

By: ______________________

Printed Name: Antony Koblish

Dated: September 23, 2015